No.  22-3135

# In the United States Court of Appeals
## FOR THE THIRD CIRCUIT

MARIA DEL ROSARIO HERNANDEZ,
PLAINTIFF-APPELLEE,

*v.*

MICROBILT CORPORATION,
DEFENDANT-APPELLANT.

On Appeal From The United States District Court
For The District of New Jersey
Case No. 3:21-cv-04238

**REDACTED OPENING BRIEF OF
DEFENDANT-APPELLANT
MICROBILT CORPORATION**

ANGELO A. STIO, III
*Counsel of Record*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543
(609) 452-1147
Angelo.Stio@troutman.com

*Attorneys for Defendant-Appellant
MicroBilt Corporation*

145761939

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant MicroBilt Corporation represents that it has no parent corporation and no publicly held company holds 10% or more of its stock.

# TABLE OF CONTENTS

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**.................. I

**JURISDICTIONAL STATEMENT** ....................................................... 1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** ................. 1

**LAR 28.1 STATEMENT OF RELATED CASES** ................................ 2

**INTRODUCTION** ................................................................................. 3

**STATEMENT OF THE CASE** .............................................................. 6

    A. The Parties have an Arbitration Agreement that Applies to
       Hernandez's Claims in this Case ................................................. 6

    B. Hernandez's Suit in the District Court, Initiation of
       Arbitration with the AAA, and the AAA's Refusal to
       Appoint an Arbitrator.................................................................... 9

    C. The District Court's Denial of MicroBilt's Motion to Compel
       Arbitration .................................................................................. 12

**SUMMARY OF ARGUMENT** ............................................................ 14

**STANDARD OF REVIEW**................................................................... 17

**ARGUMENT** ....................................................................................... 18

   I. The District Court Erroneously Nullified the Parties' Valid,
      Binding Arbitration Agreement...................................................... 18

    A. Initially, the district court correctly held that the
       Arbitration Agreement was valid, binding, and covered
       Hernandez's dispute. ................................................................. 19

    B. The district court erred by allowing the AAA administrator
       to improperly decide issues that were validly delegated
       exclusively to the arbitrator. ..................................................... 20

       1. The decision on whether the parties could proceed to
          arbitration under the bargained-for terms of their
          agreement was a decision on arbitrability delegated to
          the arbitrator......................................................................... 21

       2. Even if the AAA administrator's decision was not one of
          arbitrability, it was still improper. ....................................... 25

3. To the extent the parties' agreement is ambiguous, that ambiguity must be resolved by an arbitrator. ...................... 27

C. The district court's incorrect application of AAA administrative procedures led it to a result contrary to the express terms of the agreement, the parties' intent, and the FAA's pro-arbitration presumption. ........................... 29

1. The district court improperly gave deference to its interpretation of the AAA rules over the express agreement of the parties. ...................... 31

2. At the very least, the district court should have "harmonized" the conflicting provisions, which requires compelling arbitration before an alternative arbitrator or severance. ................................................ 33

i. The district court failed to even attempt to harmonize the parties' express agreement with AAA's refusal to open the arbitration. ....................... 34

ii. The agreement can be harmonized by compelling arbitration before an alternative arbitrator or by severance ................................................ 35

II. The District Court Erred by Concluding that the Contractual Limitations Were Invalid. ............................... 38

A. The provisions are valid and enforceable contractual limitations of remedies that do not preclude arbitration. ........ 39

B. The AAA's determination that the challenged provisions violate the AAA's Consumer Due Process Protocol was itself incorrect. ........................... 42

III. The District Court Erred by Failing to Uphold the Parties' Bargained-for Severance Provision ................................ 44

**CONCLUSION** ...................................................... 47

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995).................................................................. 32, 33

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................. 17, 39

*Baravati v. Josephthal, Lyon & Ross, Inc.*,
28 F.3d 704 (7th Cir. 1994)........................................................ 40

*Beery v. Quest Diagnostics, Inc.*,
953 F. Supp. 2d 531 (D.N.J. 2013)............................................ 45, 46

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020).................................................... 22

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005)................................................... 38

*Caruso v. Ravenswood Developers, Inc.*,
767 A.2d 979 (N.J. Super. Ct. App. Div. 2001)................................ 29

*Century Indem. Co. v. Certain Underwriters at Lloyd's,
London*,
584 F.3d 513 (3d Cir. 2009) .................................................... 17

*Ciccio v. SmileDirectClub, LLC*,
2 F.4th 577 (6th Cir. 2021) ........................................... *passim*

*Ciccio v. SmileDirectClub, LLC*,
No. 3:19-cv-00845 (D. Tenn. Mar. 9, 2020)....................................... 23

*Circle Schools v. Pappert*,
381 F.3d 172 (3d Cir. 2004) ...................................................... 17, 20

*Crofton v. Geeks on Call Holdings*,
No. 2:08cv575, 2009 U.S. Dist. LEXIS 145213
(E.D. Va. Feb. 6, 2009) ........................................................... 39

*Curtis G. Testerman Co. v. Buck*,
   667 A.2d 649 (Md. Ct. App. 1995) ...................................................... 41

*Dean v. Heritage Healthcare of Ridgeway, LLC*,
   759 S.E.2d 727 (S.C. 2014) .............................................................. 37

*Ferrari v. Aetna Life Ins. Co.*,
   754 F. App'x 266 (5th Cir. 2018) ...................................................... 41

*First Liberty Inv. Group v. Nicholsberg*,
   145 F.3d 647 (3d Cir. 1998) ......................................................... 3, 17

*Flintkote Co. v. Aviva PLC*,
   769 F.3d 215 (3d Cir. 2014) .............................................................. 18

*Galloway v. Priority Imports Richmond, LLC*,
   No. 3:19-cv-209, 2019 U.S. Dist. LEXIS 155278
   (E.D. Va. 2019) ................................................................................ 41

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
   561 U.S. 287 (2010) .......................................................................... 21

*Great Western Mortgage Corporation v. Peacock*,
   110 F.3d 222 (3d Cir. 1997) ................................................. 18, 26, 32

*Green v. U.S. Cash Advance Illinois, LLC*,
   724 F.3d 787 (7th Cir. 2013) .......................................................... 31, 37

*Harris v. Green Tree Fin. Corp.*,
   183 F.3d 173 (3d Cir. 1999) ............................................................. 17

*Heisman v. Wyndham Vacation Resorts, Inc.*,
   No. 20-11480, 2021 U.S. Dist. LEXIS 55369
   (D.N.J. Mar. 22, 2021) ..................................................................... 38

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019) ....................................................................... 21

*Hill on Behalf of Republic First Bancorp Inc. v. Cohen*,
   40 F.4th 101 (3d Cir. 2022) .............................................................. 35

*Investment Partners, L.P. v. Glamour Shots Licensing, Inc.*,
   298 F.3d 314 (5th Cir. 2002) ........................................................... 40

145761939

*Kidd v. Thomson Reuters Corp.*,
  925 F.3d 99 (2d Cir. 2019) ................................................... 7

*Martin v. SCI Mgt. L.P.*,
  296 F. Supp. 2d 462 (S.D.N.Y. 2003) ................................. 40

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ........................................... 18, 33, 40, 43

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001) ........................................... 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ................................................................ 18

*Musnick v. King Motor Co.*,
  325 F.3d 1255 (11th Cir. 2003) ......................................... 41

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers
  Statewide Benefit Funds*,
  974 F.3d 386 (3d Cir. 2020) .............................................. 21

*Oesterle v. Atria Management Co., LLC*,
  No. 09-4010-JAR, 2009 U.S. Dist. LEXIS 60057
  (D. Kan. July 14, 2009) ..................................................... 36

*Overstreet v. Contigroup Companies, Inc.*,
  462 F.3d 409 (5th Cir. 2006) ............................................. 39

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) ........................................................... 28

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
  368 F.3d 269 (3d Cir. 2004) ......................................... 45, 46

*Polimaster Ltd. v. RAE Systems, Inc.*,
  931 F.3d 832 (9th Cir. 2010) ....................................... 31, 33

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ..................................................... 33, 35

*Puelo v. Chase Bank USA, N.A.*,
  605 F.3d 172 (3d Cir. 2010) .............................................. 17

145761939

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.,*
  673 F.3d 221 (3d Cir. 2012) ............................................................ 28

*Raytheon Co. v. Automated Business Systems, Inc.,*
  882 F.2d 6 (1st Cir. 1989) ............................................................... 40

*Rent-A-Ctr., W., Inc. v. Jackson,*
  561 U.S. 63 (2010) ........................................................................... 21

*Robert Wood Johnson University Hospital at Hamilton, Inc.*
  *v. SMX Capital, Inc.,*
  No. 12-cv-7049 (JAP), 2013 U.S. Dist. LEXIS 120595
  (D.N.J. Aug. 26, 2013) ..................................................................... 39

*Shenzen Shileziyou Technologies Co. Ltd. v. Amazon.com, Inc.,*
  No. 21-cv-07083-MMC, 2021 U.S. Dist. LEXIS 236238
  (N.D. Cal. Dec. 9, 2021) ................................................................. 22

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662 (2010) ......................................................................... 29

*Szuts v. Dean Witter Reynolds, Inc.,*
  931 F.2d 830 (11th Cir. 1991) .................................................. 31, 33

*VICI Racing, LLC v. T-Mobile USA, Inc.,*
  763 F.3d 273 (3d Cir. 2014) ............................................................ 45

*Yorktowne Urology, P.C. v. Neuisys, LLC,*
  No. 1:CV-10-0644, 2010 U.S. Dist. LEXIS 86354
  (M.D. Pa. Aug. 23, 2010) ................................................................ 39

## Statutes and Rules

28 U.S.C. § 1331 ................................................................................ 1

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ........................... 1, 6

Federal Arbitration Act, 9 U.S.C. § 2, *et seq.* ................................ *passim*

Federal Rule of Appellate Procedure 4 ............................................... 1

Federal Rule of Appellate Procedure 32 ............................................. 1

Local Rule 28.3(d) ..................................................................... 1

**Other Authorities**

*Arbitrability*, Black's Law Dictionary (10th ed. 2014) ........................... 25

145761939

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to review the district court's order denying the motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B). The district court had subject-matter jurisdiction over this case asserting claims under the Fair Credit Reporting Act pursuant to 28 U.S.C. § 1331. Defendant-Appellant timely filed its notice of appeal on November 10, 2022, JA1, within 30 days of the district court's order denying MicroBilt's motion to compel arbitration entered October 25, 2022, JA2-12.  Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the district court err by nullifying an express agreement to resolve all disputes *exclusively* through binding arbitration, where: (1) the district court deferred to an American Arbitration Association ("AAA") administrator's refusal to appoint an arbitrator to address the disputes, despite the fact that the parties validly delegated all disputes to the *arbitrator*, not an *administrator*; and (2) the district court gave precedence to its own interpretation of the AAA administrative procedures that was contrary to the express terms of the parties' agreement?

Raised before the district court at ECF No. 36-11 at 13-17, 20-25, and ECF No. 43 at 3-8; ruled upon at JA7-10.[1]

2.     Do contractually-agreed-upon limitations on the recovery of punitive damages and attorneys' fees violate the AAA's Consumer Due Process Protocol, where such limitations have been repeatedly upheld by courts and where AAA itself recognizes the validity of such limitations?

Raised before the district court at ECF No. 36-11 at 25-30; ruled upon at JA11.

3.     Even if the punitive damages and attorneys' fee provisions were held to be invalid, did the district court err by not severing those provisions from the agreement to arbitration, where the explicit terms of the agreement require severance?

Raised before the district court at ECF No. 36-11 at 30-33, and ECF No. 43 at 15; ruled upon at JA11 n.13.

## LAR 28.1 STATEMENT OF RELATED CASES

This case has not previously been before this Court, nor is counsel aware of any completed or pending case or proceeding before this Court or any other court or agency, state or federal, related to this case.

---

[1]   Unless otherwise noted, all citations to "ECF No. __" refer to entries on the district court docket for case number 3:21-cv-04238.

-2-

## INTRODUCTION

Federal law, this Court, and the State of New Jersey are united in their support of a strong policy in favor of arbitration. Plaintiff-Appellee's claim here is indisputably within the scope of a valid and binding arbitration agreement, which includes a severance provision allowing an arbitration to proceed even if any specific terms were found to be unenforceable. Nevertheless, the district court held that the arbitration agreement could be set aside in its entirety based on a non-reviewable determination by an intake administrator at the American Arbitration Association ("AAA") who declared that certain provisions of the parties' agreement *mutually* limiting punitive damages and the recovery of attorneys' fees were in violation of the AAA's policies and therefore the arbitration in this matter – or any future matter Appellant pursues – could not proceed. The district court's decision to disregard a valid and enforceable arbitration agreement is contrary to prevailing law and should be reversed for a number of reasons.

First, the district court committed reversible error by nullifying the parties' valid, binding arbitration agreement. The district court reached that wrong result by deferring to a non-arbitrator AAA administrator's decision not to appoint an arbitrator to resolve the parties' dispute, based

-3-

on that administrator's interpretation and application of certain AAA administrative procedures.    The district court's deference to the administrator's decision was wrong because the administrator improperly decided issues that were delegated by the parties to *the arbitrator*, not to an administrator.  The AAA's rules, which the parties agreed would apply to their arbitration, delegate all issues of arbitrability to the arbitrator, which include any decision that has the effect of preventing the arbitration from even occurring.  The AAA's rules also delegate all questions of contractual validity to the arbitrator.

Further, even if the AAA administrator's decision was not one of arbitrability or validity, binding Third Circuit precedent requires that if there is a valid agreement to arbitrate, all other issues must be reserved for the arbitrator, including questions regarding the validity of the same types of damages limitation provisions at issue in this case.  The AAA administrator therefore acted improperly by deciding these issues without appointing an arbitrator, and the district court compounded that error by deferring to that improper decision.

The district court's reasoning for deferring to the AAA administrator was also incorrect.  The district court based its decision on certain AAA rules that the court found were incorporated by reference

into the agreement, rather than recognizing that the parties' express terms necessarily supersede any conflicting AAA rules. Further, the district court did not even attempt to harmonize that conflict, which could have been accomplished by compelling arbitration before an alternative arbitrator or by severing the specific provisions that the AAA administrator found objectionable.

Second, the district court's decision to invalidate the parties' arbitration agreement due to the presence of punitive damages and attorneys' fees limitations was simply wrong. Mutual waivers of punitive damages and attorneys' fees are routinely upheld as valid contractual limitations of remedies that bind courts of law. Further, the AAA's Due Process Protocol, which requires that the arbitrator must be authorized to grant the same types of relief available "to a court," also specifically acknowledges that the scope of the arbitrator's remedial authority can be validly limited by contract.

Third, even if the district court properly determined that the parties could not be compelled to arbitrate under the agreement with the punitive damages limitation and attorneys' fees provision intact, the appropriate remedy was for the court to sever the invalid provisions and compel arbitration under the modified agreement.

145761939

For each of those reasons, the district court's decision must be reversed and the matter compelled to arbitration.

## STATEMENT OF THE CASE

### A.    The Parties have an Arbitration Agreement that Applies to Hernandez's Claims in this Case

Plaintiff-Appellee Maria Del Rosario Hernandez ("Hernandez") applied for a loan in November 2020.  ECF No. 1 ¶ 27.  The lender from whom Hernandez sought the loan utilized MicroBilt's IBV product, with Hernandez's affirmative consent and using information Hernandez submitted, to verify her identity and bank account information.  JA127 ¶¶ 5-6; JA138-42.  Hernandez alleges that her IBV report contained an inaccurate "alert" that her name matched a name found on the U.S. Department of the Treasury's Office of Foreign Asset Control's ("OFAC") Specially Designated Nationals and Blocked Persons List.  ECF No. 1 ¶¶ 29–35.  She further alleges that the IBV report constituted a "consumer report," as defined and governed by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and that MicroBilt violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of its reports.[2]  ECF No. 1 ¶¶ 17–18, 46.

---

[2] MicroBilt denies that the IBV product, which assists in fraud prevention and identity verification and is not to be used by any lender

Hernandez cannot assert her claim in court, however, because she is bound by a valid arbitration agreement that covers her dispute. MicroBilt's business records reflect that Hernandez accessed the IBV website on November 9, 2020, and affirmatively consented to the IBV service and the Terms and Conditions in connection with her loan application. JA127 ¶ 6. During the sign-up process, Hernandez was presented with multiple clear notices regarding the IBV Terms & Conditions, including disclosures stating that those Terms & Conditions included an arbitration clause. JA127-30 ¶¶ 7-9, 12-13 (describing the sign-up process and multiple notices); JA143 (presenting language of notices). She then affirmatively consented to be bound by that arbitration agreement by (1) ███████████████████████████ ████████████████████████████████████ and (2) ██████ ██████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████ JA127-30 ¶¶ 7-9, 12-13; JA143. There also can be no doubt that Hernandez's claims are within the scope of that

---

to determine eligibility, constitutes a "consumer report," which it is not. *See, e.g.*, *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 102 (2d Cir. 2019) (holding Thomson Reuters' transmission of court records to customers who had pledged to use such records only in connection with "law enforcement, fraud prevention, or identity verification" did not constitute "consumer reports").

145761939

arbitration agreement, because the arbitration agreement requires arbitration of ███████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ JA128 ¶10 (describing arbitration agreement contained in IBV Terms & Conditions); JA148 (the arbitration agreement).[3]

Importantly, the arbitration agreement also states that ████ ██████████████████████████████████████████████ (the "Exclusive Resolution" clause). JA148 (emphasis added). The "only exception" provided to this "Exclusive Resolution" clause is ███████ █████████████████████████████, which is not relevant to Hernandez's dispute in this case. *Id.* For all other disputes and claims, the arbitration agreement requires "binding arbitration" as the "exclusive" forum for resolution, and explains that ██████████████ ████████████████████████████████████████████████ █████████████████████ (the "Rules Selection" clause).

---

[3] Nor can Hernandez argue that the agreement was unenforceable. The district court recognized that Hernandez failed to raise any argument regarding unenforceability until her opposition to MicroBilt's second motion to compel arbitration, and the district court found instead that "there was a valid agreement to arbitrate." JA7 & n.5. Hernandez has not appealed that holding.

*Id.* That Rules Selection clause is the only reference to the AAA in the entire agreement. *See generally* JA144-49.

**B.    Hernandez's Suit in the District Court, Initiation of Arbitration with the AAA, and the AAA's Refusal to Appoint an Arbitrator**

Hernandez filed suit against MicroBilt on March 5, 2021. ECF No. 1. MicroBilt raised the issue of the arbitration agreement with Hernandez and requested dismissal, but Hernandez refused to do so. Accordingly, on July 26, 2021, MicroBilt timely filed its initial Motion to Compel Arbitration and to Dismiss. ECF No. 11. After obtaining two extensions for her deadline to respond, Hernandez ultimately acknowledged the validity of her agreement to arbitrate by dismissing the action  on September 21, 2021. ECF No. 17. Hernandez then initiated an arbitration with the AAA. JA28.

On October 28 and November 22, 2021, the AAA sent two perfunctory letters to MicroBilt concerning an "administrative review" that unidentified AAA staff members purportedly performed on the parties' arbitration agreement (the "Waiver Letters"). JA150-52 (October 28 Letter); JA153-54 (November 22 Letter). The Waiver Letters claimed that certain provisions in the arbitration agreement between MicroBilt and Hernandez constitute "a material or substantial deviation from the

Consumer Rules and/or Protocol." JA150. Specifically, in the October 28 letter, the AAA challenged the parties' damages limitation clause and its forum selection clause. JA150-51. In the November 22 letter, however, the AAA staff (without explanation) changed its position to no longer challenge the forum selection clause, but continued to challenge the damages limitation clause, and asserted, for the first time, a challenge to the agreement's attorneys' fees shifting provision. JA153. The damages limitation and attorneys' fees shifting provisions challenged in the November 22 letter are bi-lateral and state:



JA153.

The Waiver Letters claimed that these two provisions violated Principle 14 of the AAA's Consumer Due Process Protocol, and AAA staff demanded that MicroBilt waive the provisions in question in "this matter and *any future consumer arbitrations* filed under this agreement under the Consumer Rules and in compliance with the [Due Process] Protocol." JA151 (requesting waiver for "this matter and any future consumer

arbitrations filed under this agreement"); JA153 (challenging damages limitation and attorneys' fees provision). MicroBilt contacted the AAA to seek further information, but was only vaguely informed that the waiver decision was made by the "AAA," not an arbitrator. *See* JA33 (email from counsel to AAA); JA134 ¶ 11 (declaration of A. Stio, III).

On November 23, 2021, MicroBilt wrote the AAA to contest its "administrative" determination that the parties' arbitration agreement violates the AAA's Due Process Protocol, identifying numerous reasons why that decision was incorrect. JA155-58. Following its November 23 letter, MicroBilt requested on multiple occasions that the AAA appoint an arbitrator to decide this threshold issue. JA135 ¶ 14. The AAA refused to do so, with no further explanation. *Id.* In fact, the AAA *never* substantively responded to MicroBilt's arguments and never appointed an arbitrator, but instead administratively closed the matter on February 11, 2022. JA159-60 (AAA's Jan. 14, 2022 letter reiterating its position but failing to address MicroBilt's arguments); JA46 (AAA's Feb. 11, 2022 letter closing its file on the matter).

That decision not to permit the parties to even begin arbitration and to close the matter based on the challenged contractual provisions and MicroBilt's unwillingness to provide a prospective waiver of the

enforcement of such provisions in the future was made by a non-arbitrator AAA staff administrator, Mr. Adam Shoneck.   JA35 (November 22 letter identifying Adam Shoneck as signatory).

Following the AAA's refusal to appoint an arbitrator, MicroBilt requested that Hernandez move forward with an alternative arbitration group to allow an arbitrator to substantively consider the issues raised by the AAA administrator in the Waiver Letters.  JA136 ¶ 18.  MicroBilt even went so far as to have an arbitrator clear any potential conflicts and begin the process of commencing the arbitration.[4]  *Id.*  Hernandez refused to move forward with the alternative arbitrator, and instead returned to the district court to seek relief.  ECF No. 28.  MicroBilt moved to compel arbitration a second time.  ECF No. 36.

### C.   The District Court's Denial of MicroBilt's Motion to Compel Arbitration

On October 25, 2022, the district court issued a Letter Order denying MicroBilt's Second Motion to Compel Arbitration.  JA2-12.  The district court found as an initial matter "that there was a valid agreement to arbitrate," that "the parties had agreed to arbitrate their dispute in

---

[4] MicroBilt engaged former longtime New Jersey Superior Court Judge Eugene D. Serpentelli from Benchmark Resolution Services, LLC in New Jersey.  *See* Judge Eugene D. Serpentelli, Retired, Benchmark Resolution Services, https://www.benchmarkresolutions.com/eds.html.

-12-

accordance with the terms set forth in that agreement," and that there was no dispute that "Plaintiff's claim falls within the scope of the Arbitration Agreement."  JA7.

Nevertheless, the district court permitted Hernandez to return to court.  The district court's reasoning went as follows:

1) The arbitration agreement's Rules Selection clause provides that the arbitration would be conducted ████████████████ ████████████;

2) By referencing the applicability of the AAA's rules to the arbitration, the parties incorporated and consented to administration of their arbitration solely by the AAA, and to application of all AAA pre-arbitration procedures;

3) By consenting to AAA administration and procedures, the parties consented to the administrative process outlined in Consumer Rule 1(d), by which the AAA reviews arbitration agreements for compliance with the Due Process Protocol;

4) By consenting to AAA administration and procedures, the parties authorized the AAA to "have the final decision on . . . which AAA staff members will administer the case";

5) Because it was authorized to decide who will "administer the case," the AAA could empower a *non-arbitrator* administrator to decide the fate of the parties' arbitration agreement;

6) That non-arbitrator administrator could then force MicroBilt to either (1) waive bargained-for contractual terms for this and all future arbitrations or (2) lose the opportunity to arbitrate this matter at all, based only on the administrator's unexplained, unappealable interpretation of the AAA Consumer Rules and Due Process Protocol.

JA7-8.

145761939

Thus, according to the district court's reasoning, the single reference to "the rules of the AAA" in the Rules Selection clause permitted a non-arbitrator AAA administrator's unexplained and unappealable decision to short-circuit the arbitration before it ever reached an arbitrator.

## SUMMARY OF ARGUMENT

I.    The district court committed error by nullifying the parties' valid and binding arbitration agreement recognizing all disputes would be resolved exclusively through binding arbitration, based on an improper and incorrect application of AAA procedures and contrary to the express terms of the parties' agreement.

A.    The district court first correctly recognized that the parties' arbitration agreement was valid, binding, and covered Hernandez's dispute, and Hernandez failed to appeal that determination.

B.    The district court erred, however, by concluding that the parties' agreement could be negated by an AAA *administrator's* decision on issues that the parties had delegated only to the *arbitrator*. By selecting the AAA's adjudicative rules for their arbitration, the parties delegated all questions of arbitrability and validity of their agreement to the arbitrator, which includes procedural decisions that have the effect

-14-

of precluding arbitration.  Further, binding Third Circuit precedent also requires the exact kind of challenges to damages limitation clauses at issue here to be resolved by an arbitrator.  Finally, to the extent there is any ambiguity in the agreement as to whether the parties had agreed to allow a non-arbitrator administrator to decide whether and on what terms they could proceed to arbitration, that preliminary question of ambiguity also must be decided by an arbitrator.

C.    The district court also erred by improperly applying AAA administrative procedures to nullify the parties' agreement.    The Exclusive Resolution clause of the parties' agreement expressly states that ██████████████████████████████████████████████ ████████████    Instead of honoring that express agreement, the court chose to rely on AAA administrative procedures, which the court interpreted as allowing the AAA administrator to make its own determination on whether to accept the arbitration and to allow Hernandez to return to court if the AAA declined to do so.  Under basic contract principles and the Federal Arbitration Act, 9 U.S.C. § 2 *et seq.* ("FAA"), the district court was required to give precedence to the parties' express agreement over any "conflicting" AAA rules that the court found were incorporated by reference into the agreement.  Further, even if the express terms of the

parties' agreement do not completely supersede the conflicting AAA rules, the court should have sought to harmonize the conflict. That conflict could have been easily resolved by, for instance: (1) compelling arbitration before an alternative arbitrator; or (2) severing the punitive damages and attorneys' fees limitation provisions and compelling arbitration under a modified agreement.

II. The district court's decision to negate the arbitration clause based on the specified limitations of punitive damages and attorneys' fees also was error. Waivers of punitive damages and attorneys' fees are routinely enforced by courts, and the AAA Due Process Protocol on which the AAA administrator relied to refuse to open the arbitration specifically allows for such contractual limitations to the same extent that they are valid in a court of law.

III. Finally, even if the district court had correctly concluded that the mutual damages limitation clause and attorneys' fees provisions were a violation of the AAA's policies and thus prevented arbitration, the proper remedy was for the court to sever those provisions and compel arbitration under a modified agreement.

145761939

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion to compel arbitration. *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 649 (3d Cir. 1998). Where the appellee does not cross-appeal the district court's rulings in favor of the appellant, as here, this Court's review is limited to the issues appealed by the appellant. *Circle Schools v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004).

The Federal Arbitration Act, 9 U.S.C. § 2 *et seq.* ("FAA"), creates a "strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) ("[F]ederal law presumptively favors the enforcement of arbitration agreements."). The FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Puelo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177–78 (3d Cir. 2010). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748;

-17-

accord *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

Under the FAA, a court reviewing an arbitration agreement conducts a limited review only to determine whether a valid agreement to arbitrate exists, and whether the parties' dispute is within the scope of that agreement. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014). If a valid agreement to arbitrate exists, the court must compel arbitration. *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). The court must resolve any doubts concerning the scope of the agreement or any other defense to arbitrability in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (noting that "federal policy favors arbitration").

## ARGUMENT

## I. The District Court Erroneously Nullified the Parties' Valid, Binding Arbitration Agreement

Instead of applying the plain language of the parties' agreement to arbitrate, the district court nullified the parties' agreement and allowed Hernandez to do exactly what she had agreed she could not do: litigate her claim in court. The district court did so by: (1) deferring to an AAA staff administrator who improperly decided issues that the parties had

145761939

delegated exclusively to decision by an *arbitrator*, and (2) by erroneously relying on general provisions of arbitration rules purportedly incorporated into the parties' agreement to override the parties' express agreement and avoid arbitration entirely.

> **A.    Initially, the district court correctly held that the Arbitration Agreement was valid, binding, and covered Hernandez's dispute.**

The district court reached one conclusion that was <u>*correct*</u> as a matter of fact and law: Hernandez voluntarily entered a valid and binding arbitration agreement with MicroBilt which covers her dispute. JA7 ("I am satisfied that there was a valid agreement to arbitrate . . . [and] neither party disputes that Plaintiff's claim falls within the scope of the Arbitration Agreement.")  The district court noted that Hernandez contested for the first time in her Opposition to MicroBilt's Second Motion to Compel Arbitration (and not to the AAA) that the arbitration agreement was not enforceable.  JA7 n.5.  But the court also noted that Hernandez initially dismissed her suit in response to MicroBilt's first motion to compel arbitration, and voluntarily initiated arbitration with the AAA under that agreement.  *Id.*

Hernandez has not cross-appealed the issue of the validity of the parties' agreement; therefore, that issue is not before this Court.  *See*

145761939

*Circle Schools v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004). Thus, the validity of the parties' agreement to arbitrate is undisputed in this appeal.

**B.    The district court erred by allowing the AAA administrator to improperly decide issues that were validly delegated exclusively to the arbitrator.**

Despite finding the parties had entered a valid and binding agreement to arbitrate that covered Hernandez's dispute, the district court nevertheless nullified that agreement by holding that the AAA administrator's decision not to administer the arbitration permitted Hernandez to return to court to litigate her claim. That deference to the AAA administrator's decision was an error because the AAA administrator had no authority to decide threshold questions of arbitrability and the validity of the parties' agreement that the parties had delegated exclusively to *the arbitrator*. And, even if the decision of the AAA administrator did not go to "arbitrability" or "validity," the AAA administrator nevertheless usurped the role of the arbitrator to exclusively decide "all other issues" related to arbitration, which would include the challenges to the damages and attorneys' fees provision here.

**1.    The decision on whether the parties could proceed to arbitration under the bargained-for terms of their agreement was a decision on arbitrability delegated to the arbitrator.**

"Gateway" questions of arbitrability and validity of an arbitration agreement are ordinarily left to the court to decide, but that is <u>only</u> true "[w]here there is no provision validly committing them to an arbitrator." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 297 (2010). Parties may agree to instead delegate "exclusive authority" to decide such matters to the arbitrator. *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019); *see also MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) ("[T]he district court must treat [the parties' delegation provision] as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the *arbitrator*.") (emphasis added and internal quotations omitted).

Relevant here, the AAA's Consumer Rules specifically delegate issues of arbitrability of the dispute and validity of the agreement to *the*

*arbitrator* (not an administrator). AAA Consumer Rule 14 provides that "*[t]he arbitrator* shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope, or validity of the arbitration agreement.*" JA65 (emphases added).

Accordingly, courts consistently hold that an arbitration agreement which incorporates by reference the AAA's rules constitutes a "clear and unmistakable" agreement to delegate arbitrability, validity, and scope to the arbitrator. *See, e.g., Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020); *Shenzen Shileziyou Technologies Co. Ltd. v. Amazon.com, Inc.*, No. 21-cv-07083-MMC, 2021 U.S. Dist. LEXIS 236238, at *7-8 (N.D. Cal. Dec. 9, 2021) (holding parties' incorporation of the AAA's rules in arbitration agreement meant "plaintiffs agreed to delegate to the arbitrator the issue of arbitrability," which even included the plaintiffs' challenges to the agreement as unconscionable).

Thus, by including the Rules Selection clause in their agreement, the parties delegated all issues of arbitrability, validity, and scope of their agreement to the arbitrator.[5]

---

[5] Although MicroBilt disputes that the Rules Selection clause required application of all of the AAA's administrative procedures, there is no dispute that it required application of the AAA's adjudicative rules

The Sixth Circuit's decision in *Ciccio* is particularly instructive. In *Ciccio*, much like this case, the plaintiff voluntarily dismissed his suit from court due to the existence of an arbitration agreement, but the same AAA administrator (Mr. Adam Shoneck)[6] refused to administer the arbitration based on his application of the AAA's Healthcare Due Process Protocol. 2 F.4th at 579-80. After the plaintiff returned to court, the district court held that the administrator's decision not to open the arbitration meant that the plaintiff had "satisfied his obligations under the arbitration agreement," and the court thus refused to compel the plaintiff back to arbitration. *Id.* at 580. On appeal, however, the Sixth Circuit recognized that the AAA administrator's application of the Healthcare Due Process Protocol in such a way as to prevent the arbitration from proceeding past the administrative review stage was "in effect" a decision on arbitrability. *Id.* at 579, 582. The court held that "neither the [AAA] administrator nor the district court should have decided whether [the plaintiff's] claims were arbitrable," *id.* at 582,

---

for the arbitration. *See infra* Section I.C.2.ii. Consumer Rule 14, which governs the scope of the arbitrator's authority, is unquestionably an adjudicative rule pertaining to the conduct of the arbitration.

[6] *See* Exhibit J to Decl. of Elizabeth Gonser, *Ciccio v. SmileDirectClub, LLC*, No. 3:19-cv-00845 (D. Tenn. Mar. 9, 2020) (ECF No. 88) (Letter from Adam Shoneck).

because the parties delegated the issue of arbitrability to the *arbitrator*,[7] as distinct from an AAA *administrator* (Mr. Shoneck), *id.* at 584–85. On that basis, the Sixth Circuit reversed and mandated that the district court compel arbitration. *Id.* at 588.

The court in *Ciccio* also held that, regardless of whether the AAA administrator's decision was viewed as a matter of interpretation of the parties' agreement or merely application of the AAA's policy, it was improper. First, it was improper for the administrator to interpret the parties' agreement at all, "because the parties contracted for an arbitrator (not an administrator) to do so." *Id.* at 584. Second, even if the administrator was simply "following AAA's views of sound policy," the decision was still improper, because the AAA "is not at liberty to 'impose its own view of sound policy' regarding when or how parties should be allowed to arbitrate independent of the parties' own choices in their contract." *Id.* at 585. That policy decision was for the arbitrator.

Seeking to avoid the sound reasoning of *Ciccio*, the district court held that *Ciccio* was distinguishable because it involved a question of arbitrability, whereas this case "does not raise any fundamental issues

---

[7] The court held that the parties had done so by providing in their agreement that any arbitration would be "resolved using the rules of the [AAA]." *Id.* at 583.

as to arbitrability of an agreement" because the parties "agreed on the threshold issues of arbitrability." JA10. But even though the parties here agreed on the threshold issue of arbitrability, the result of the AAA administrator's decision was that they simply could not arbitrate. That was, *by definition*, a decision on arbitrability. *See Arbitrability*, Black's Law Dictionary (10th ed. 2014) ("The status of a dispute's being or not being within the jurisdiction of arbitrators to resolve, based on . . . whether any procedural prerequisites to arbitration have been satisfied . . . ."). But that decision was not made by the arbitrator, as required.

Finally, in attempting to distinguish *Ciccio*, the district court also ignored that under the AAA's Consumer Rules, any questions regarding the *validity* of the parties' agreement were also delegated to the arbitrator. *See* JA65 (AAA Consumer Rule 14). The AAA administrator's determination that the challenged provisions were invalid under the AAA's Consumer Due Process Protocol was also a decision on the validity of the parties' agreement, and thus should have been decided by the arbitrator.

> ## 2. Even if the AAA administrator's decision was not one of arbitrability, it was still improper.

The district court also erred in its refusal to delegate the disputed issues to the arbitrator based on its view that the question presented to

it was not one of "arbitrability." JA10. The categorization of the parties'

dispute, however, is ultimately irrelevant. That is because Third Circuit

precedent requires that "[o]nce a dispute is determined to be validly

arbitrable, *all other issues* are to be decided at arbitration." *Great W.

Mortg. Corp.*, 110 F.3d at 230 (emphasis added). This conclusion is

required to effectuate "the purpose of the FAA . . . to ensure that

agreements to arbitrate are enforced." *Id.* at 230-31.

In *Great Western Mortgage*, for example, the plaintiff similarly

argued that an arbitration agreement was contrary to New Jersey public

policy because it waived her right to recover attorneys' fees and punitive

damages, among other statutory rights. *Id.* This Court rejected her

argument. *Id.* The court held that "a court compelling arbitration should

decide only such issues as are essential to defining the nature of the

forum in which a dispute will be decided," while all other disputes are

reserved to the arbitrator. *Id.* at 230. Addressing the challenged waiver

of punitive damages specifically, this Court held that the plaintiff was

required to "present her challenge to *the arbitrator*, who [would]

determine the validity and enforceability of the waiver of asserted state

law rights." *Id.* at 231 (emphasis added).

Here, the AAA administrator again usurped the role of the arbitrator by deciding the exact question at issue in *Great Western Mortgage*: whether the arbitration agreement's limitations on damages and attorneys' fees should preclude arbitration. The district court affirmed that administrator decision. Under Third Circuit precedent, however, that question must be answered by an arbitrator alone, not an administrator (or a court).

### 3. To the extent the parties' agreement is ambiguous, that ambiguity must be resolved by an arbitrator.

The district court ultimately justified its deference to the AAA administrator's decision by reasoning that the parties consented to the AAA's administrative review process by agreeing to arbitrate according to the rules of the AAA. As explained further below, that conclusion was wrong, because the parties' express agreement to submit _all_ disputes to exclusive resolution in arbitration (the Exclusive Resolution clause) cannot be overridden by the general adoption of AAA adjudicative rules for conducting the arbitration (the Rules Selection clause). *See infra* Section I.C.1. Even if the agreement is ambiguous as to whether the parties intended for the Rules Selection clause to override the Express

-27-

Resolution clause, that ambiguity must be resolved by an *arbitrator*, not a district court.[8]

"The Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 231 (3d Cir. 2012) (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003)).   Thus, when there is "an antecedent question of how the ambiguity is to be resolved," and the decision regarding whether to compel arbitration turns on that antecedent question, "the proper course is to compel arbitration." *PacifiCare Health Sys., Inc.*, 538 U.S. at 406-07.

At the very least, the parties' arbitration agreement is ambiguous as to whether they consented to allow a non-arbitrator AAA staff administrator to refuse to even appoint an arbitrator, thus precluding any possible arbitration before it began.   The district court resolved that ambiguity in favor of litigation by concluding that MicroBilt consented to

---

[8] To be clear, the arbitration agreement is not ambiguous: the express terms of the contract, which require arbitration as the exclusive forum for resolution, control over any purportedly incorporated administrative procedures of the AAA, to the extent such rules were even incorporated into the agreement at all. *See infra* at Section I.C.1. MicroBilt argues only in the alternative, assuming ambiguity for discussion purposes.

145761939

the AAA's procedures and that those procedures allowed Hernandez to return to court contrary to her express agreement otherwise. JA7-8. It was not the court's place to do so.

### C. The district court's incorrect application of AAA administrative procedures led it to a result contrary to the express terms of the agreement, the parties' intent, and the FAA's pro-arbitration presumption.

Arbitration agreements are contracts, and thus, "as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010); *accord Caruso v. Ravenswood Developers, Inc.*, 767 A.2d 979, 505-06 (N.J. Super. Ct. App. Div. 2001). And here, the Exclusive Resolution clause of the parties' agreement specifically provides that ██████████████████████████ ████████████████████████████ and emphasizes that the "only exception" is in ██████████████████████████ ████████, not at issue here. JA148.

With those standards in mind, the district court held that by agreeing to apply the "rules of the AAA" when conducting the arbitration, the parties had consented to the AAA's adjudicative Consumer Rules and the AAA's "process for administering arbitrations." JA7. The court then listed several Consumer Rules that informed its analysis:

- Consumer Rule 1(a), which the court characterized as requiring "that the application of the AAA's rules and [the] AAA administration of the consumer arbitration shall be an essential term of their consumer agreement";

- Consumer Rule 1(b), which states that when parties agree to arbitrate under the Consumer Rules, they "authorize" the AAA to administer the arbitration, and also states that the AAA has discretion to assign the administration to any of its offices and may allow any of its representatives to carry out its authority and duties;

- Consumer Rule 13, which states that when parties agree to arbitrate under the AAA rules, "the parties also agree that AAA will administer the arbitration" and that the "AAA will have the final decision on . . . which AAA staff members will administer the case"; and

- Consumer Rule 1(d), which sets forth the administrative process through which the AAA accepts or rejects cases, and purports to authorize parties to pursue their dispute in court if the AAA declines to administer the arbitration.

JA7-8.

The district court's deference to those AAA rules over the express terms of the parties' agreement was error. At the very least, the district court was charged with harmonizing those terms, and erred by failing to even attempt to do so. These errors require reversal.

145761939

### 1.    The district court improperly gave deference to its interpretation of the AAA rules over the express agreement of the parties.

Even assuming the parties' agreement "fully incorporated" the AAA's rules, the district court erred by allowing its interpretation of the AAA rules to override the express terms of the parties' agreement.

A court should rightly be "skeptical of decisions that allow a court to [rely on] a particular aspect of an arbitration clause . . . and on that account scuttle the arbitration itself." *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 791 (7th Cir. 2013); *see also Ciccio*, 2 F.4th at 586 (refusing to "interpret [an] agreement to arbitrate to permit [the plaintiff] to avoid arbitration" simply because the agreement "incorporates the AAA rules").

If a conflict exists between the plain language of the parties' contract and a rule purportedly incorporated into the contract, the plain language of the parties' *contract* must prevail.  In such cases, "the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated *only to the extent that they do not conflict with the express provisions of the arbitration agreement." Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991) (emphasis added); *see also Polimaster Ltd. v. RAE Systems, Inc.*, 931 F.3d

832, 841 (9th Cir. 2010) ("The arbitrator could not override the parties' express agreement in favor of general procedural rules.").

Furthermore, the FAA's strong pro-arbitration presumption requires courts to resolve any conflict between the terms of an arbitration agreement and a rule incorporated by reference in that agreement in favor of arbitration. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-73 (1995) (holding FAA preempted Alabama statute that would have prevented arbitration, even though the arbitration agreement expressly incorporated Alabama law); *Great W. Mortg. Corp.*, 110 F.3d at 228 (holding the FAA requires doubts to be "resolved in favor of arbitration").

The Exclusive Resolution clause of the parties' agreement expressly provides that ██████████████████████████████████████ ██████████████████████ JA148. The Rules Selection clause, by contrast, merely states that the arbitrator must conduct the arbitration ██ ██████████████████████████████ *Id.* Yet, the district court relied on that single reference to the rules of the AAA to "scuttle the arbitration" altogether, by holding that the parties consented to the AAA administrative review process and, by doing so, consented to allow an AAA administrator to decide whether they could even reach an arbitrator

at all.  JA7-8.  The district court's failure to give precedence to the express terms of the parties' agreement over the purportedly conflicting AAA procedures was an error.

> **2.    At the very least, the district court should have "harmonized" the conflicting provisions, which requires compelling arbitration before an alternative arbitrator or severance.**

As explained above, when the express terms of an arbitration agreement directly conflict with rules that are only incorporated by reference into the agreement, the express terms *must* control and negate any conflicting rules purportedly incorporated into the agreement.  *Szuts*, 931 F.2d at 832; *Polimaster*, 931 F.3d at 841; *see also Allied-Bruce Terminix Cos.*, 513 U.S. at 272-73.

But, even in those cases where: (1) an agreement explicitly incorporates privately promulgated rules; and (2) those rules only appear to conflict with express terms of the arbitration agreement, the court is still tasked with finding the "best way to harmonize" the apparently conflicting terms, instead of nullifying the express terms altogether.  *Preston v. Ferrer*, 552 U.S. 346, 362 (2008) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995)) (finding that parties' adoption of AAA rules conflicted with an "inference" regarding

-33-

the parties' intent that could be drawn from arbitration agreement's choice-of-law clause, and thus weighed against drawing that inference).

### i. The district court failed to even attempt to harmonize the parties' express agreement with AAA's refusal to open the arbitration.

Here, the district court erred by failing to even attempt to harmonize the purportedly irreconcilable conflict it found between the express terms of the parties' agreement and the AAA rules.

Once again, the Sixth Circuit's decision in *Ciccio* is instructive. After AAA administrator Adam Shoneck (the same administrator involved here) refused to appoint an arbitrator based on his application of the AAA's Healthcare Due Process Protocol, the plaintiff returned to court and argued that the AAA's refusal to administer the arbitration permitted him to litigate his claims despite his valid arbitration agreement. *Id.* at 580. Considering that argument, the Sixth Circuit found that the parties had incorporated the AAA's rules into their agreement, "which could perhaps be read to include the AAA's due process review." 2 F.4th at 586. Nevertheless, the court recognized that those rules "must be read together with the Agreement" to ascertain the parties' intent. *Id.* "When an arbitration agreement and its incorporated rules seem to conflict, our job is to find the 'best way to harmonize' them."

*Id.* (citing *Preston v. Ferrer*, 552, U.S. 346, 362-63 (2008)). "[T]o give effect to both the parties' agreement that 'the arbitration shall be conducted by a single, neutral arbitrator' and that the arbitration 'shall be resolved using the rules of the [AAA],' we can't read the AAA rules to preclude decision by an arbitrator." *Id.* Accordingly, the Sixth Circuit remanded with instructions to compel arbitration. *Id.* at 588.

In this case, the district court ignored the Sixth Circuit's well-reasoned conclusion that the AAA's rules must be harmonized with the parties' agreement to arbitrate, and instead scuttled the arbitration itself based on a supposed conflict with incorporated rules. Indeed, the district court made "no discernible effort to harmonize" that conflict before simply "tossing out" the parties' entire agreement to arbitrate. *Hill on Behalf of Republic First Bancorp Inc. v. Cohen*, 40 F.4th 101, 114 (3d Cir. 2022) (holding district court erred by interpreting contract in such a way as to "create an inconsistency, making no discernible effort to harmonize the provisions before tossing out [a] crucial" provision). That was error.

### ii. The agreement can be harmonized by compelling arbitration before an alternative arbitrator or by severance.

The district court's failure to harmonize the conflict between the parties' agreement and AAA's refusal to open the arbitration was

particularly erroneous because that conflict is, in reality, simple to resolve.  The Court can harmonize the parties' agreement in two ways: (1) by compelling arbitration before an alternative arbitrator; or (2) by severing the provisions that the AAA found objectionable and compelling arbitration under a modified agreement.

The purported "conflict" between the parties' agreement and the AAA rules only arose in the first instance because of AAA administrator Shoneck's procedural refusal to open the arbitration.  Yet, the parties' agreement does not require that the arbitration can only be conducted before the AAA; it simply requires application of the AAA's adjudicative rules when conducting the arbitration.

The *only* reference to the AAA in the parties' agreement is the Rules Selection clause, which states the ███████████████████████████ ████████████████████████████████████████ JA148. That language simply requires that: (1) a single arbitrator preside; and (2) that arbitrator (from AAA or otherwise) apply AAA's adjudicative rules when conducting the arbitration.  *See Oesterle v. Atria Management Co., LLC*, No. 09-4010-JAR, 2009 U.S. Dist. LEXIS 60057, at *25 (D. Kan. July 14, 2009) ("Thus, the AAA provision covers the rules to abide by when

conducting the arbitration, while AAA policy . . . is simply just that—AAA's policy.").[9]

Hence, the conflict could have been easily resolved in harmony with the parties' agreement simply by compelling arbitration before an alternative arbitrator, who would then apply the adjudicative rules of the AAA. *See Green*, 724 F.3d at 789-93 (compelling arbitration before alternative arbitrator where parties had agreed to arbitrate under the rules of a specific arbitration body, but that body was not accepting consumer arbitrations once the parties sought to arbitrate). Alternatively, as noted below, the district court could have harmonized the conflict as a last resort by simply severing the damages and attorneys' fees limitation provisions of the parties' agreement and compelling arbitration of the parties' issues under a modified agreement. That too would have resolved the conflict entirely, since the AAA's only basis for rejecting the arbitration was the purported conflict between those

_____

[9] Courts have recognized a clear distinction between arbitration provisions that require an arbitrator to apply the AAA's adjudicative rules versus provisions that require the AAA to administer the arbitration. *See, e.g., Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 733-34 (S.C. 2014) (adopting "majority rule" that agreement to arbitrate "in accordance with" the rules of the AAA did not require AAA administration, because "the named arbitral forum is not a material term to agreements in which the parties agree to arbitrate 'in accordance with' the named forum's rules") (collecting cases).

provisions and the AAA's Consumer Due Process Protocol.  Indeed, under the terms of the parties' agreement and Third Circuit precedent, severance was the required course if any portion of the parties' agreement was found to be invalid.  *See infra* Section III.[10]

## II.    The District Court Erred by Concluding that the Contractual Limitations Were Invalid.

The district court also erred by concluding, in summary fashion, that the AAA's substantive determination regarding the validity of the challenged provisions was sound.  JA11.  It was not.

---

[10] In support of its decision, the district court cited "other federal courts [that] have similarly refused to compel arbitration in circumstances where the AAA declined to administer an arbitration based on the failure of a party to comply with the AAA's policies and procedures."  JA8-9.  However, the decisions cited (nearly all of which are out-of-circuit) generally involved the circumstance where a party refused to pay required arbitration fees or otherwise wrongly refused to participate in the arbitration, which constituted a *breach* of the arbitration agreement that prevented the breaching party from enforcing the agreement.  *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010-12 (9th Cir. 2005) (defendant had materially breached the agreement by initially refusing to arbitrate the plaintiff's dispute).  Nothing of the sort has occurred here.  Indeed, in a show of good faith, MicroBilt fully paid all required arbitration fees, despite the fact that the AAA was demanding at the time that MicroBilt waive valid provisions of its arbitration agreement for this matter – and all future arbitrations.  *See* JA158 (Letter from T. St. George to A. Shoneck); JA46 (Letter from AAA to Counsel acknowledging refund of arbitration fees to MicroBilt).  The only decision cited by the court that is within this circuit, *Heisman v. Wyndham Vacation Resorts, Inc.*, No. 20-11480, 2021 U.S. Dist. LEXIS 55369, at *2 (D.N.J. Mar. 22, 2021), involved an agreement that specifically stated the arbitration "shall be administered by the AAA under its Consumer Arbitration Rules."  That is also not the case here.

Furthermore, MicroBilt has never declined to comply with the AAA's rules, properly construed.  *See infra* Section II.

**A.    The provisions are valid and enforceable contractual limitations of remedies that do not preclude arbitration.**

Arbitration agreements are to be interpreted according to ordinary principles of contract law and are to be enforced according to their terms. *AT&T Mobility*, 563 U.S. 333, 339 (2011).  Accordingly, courts routinely recognize contractual limitations of damages as valid and enforceable. *See, e.g.*, *Overstreet v. Contigroup Companies, Inc.*, 462 F.3d 409, 412 n.2 (5th Cir. 2006) (recognizing the validity of damages limitation stems from parties' freedom of contract); *Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Capital, Inc.*, No. 12-cv-7049 (JAP), 2013 U.S. Dist. LEXIS 120595, at *5, 17 (D.N.J. Aug. 26, 2013) (holding contractual waiver of consequential damages was enforceable); *Yorktowne Urology, P.C. v. Neuisys, LLC*, No. 1:CV-10-0644, 2010 U.S. Dist. LEXIS 86354, at *21 (M.D. Pa. Aug. 23, 2010) (dismissing contractual claims for punitive damages based on contractual waiver); *Crofton v. Geeks on Call Holdings*, No. 2:08cv575, 2009 U.S. Dist. LEXIS 145213, at *15 (E.D. Va. Feb. 6, 2009) (enforcing a contractual waiver of punitive damages).

The AAA challenged two provisions of the parties' arbitration agreement.  The first regarded a limitation on certain forms of punitive damages, and the second required the parties to bear their own fees.  As

145761939

to the punitive damages limitation, it is well settled that "[p]rovisions in arbitration agreements that prohibit punitive damages are generally enforceable." *Investment Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 318 n.1 (5th Cir. 2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56–57 (1995)); *see also Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir. 1994) ("[P]arties to adjudication have considerable power to vary the normal procedures, and surely can stipulate that punitive damages will not be awarded.") (internal citation omitted); *Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6, 12 (1st Cir. 1989) ("Parties that do wish arbitration provisions to exclude punitive damages claims are free to draft agreements that do so explicitly."); *Martin v. SCI Mgt. L.P.*, 296 F. Supp. 2d 462 (S.D.N.Y. 2003) (recognizing parties to an arbitration agreement may expressly preclude an arbitrator from awarding punitive damages). "In other words, if the contract says 'no punitive damages,' that is the end of the matter, for courts are bound to interpret contracts in accordance with the expressed intentions of the parties—even if the effect of those intentions is to limit arbitration." *Mastrobuono*, 514 U.S. at 56–57 (emphasis added).

145761939

The same is true for the attorneys' fees provision. Courts routinely uphold the enforceability of arbitration agreements that modify the default rules for awarding attorneys' fees, including for consumer claims. *See, e.g.*, *Musnick v. King Motor Co.*, 325 F.3d 1255, 1259 (11th Cir. 2003) ("It is clear that the district court erred in holding that Musnick cannot be compelled to arbitrate because the 'loser pays' provision of the Agreement denies him his statutory rights under Title VII."); *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 659 (Md. Ct. App. 1995) (holding arbitrator was without authority to grant attorneys' fees where arbitration agreement did not authorize an award of attorneys' fees); *see also Ferrari v. Aetna Life Ins. Co.*, 754 F. App'x 266, 269 (5th Cir. 2018) (discussing statutory right to attorneys' fees and noting "statutory rights can be waived by contract"); *Galloway v. Priority Imports Richmond, LLC*, No. 3:19-cv-209, 2019 U.S. Dist. LEXIS 155278, at *6 (E.D. Va. 2019) (holding a "mediation agreement's waiver of attorney's fees also does not constitute substantive unconscionability," even when contained in a "contract of adhesion"). Accordingly, both challenged provisions are valid exercises of the parties' freedom of contract, and under the FAA the provisions must be enforced.

145761939

The district court failed to address *any* of this authority.  The provisions are enforceable contractual terms, meaning that arbitration was required.

**B.   The AAA's determination that the challenged provisions violate the AAA's Consumer Due Process Protocol was itself incorrect.**

In addition to being contrary to law, the district court also failed to recognize that the AAA administrator's determination was itself contrary to the Due Process Protocol and the AAA's *own* published interpretation of that Protocol.

The AAA purported to base its decision in the Waiver Letters on Principle 14 of the Consumer Due Process Protocol.  But, Principle 14 provides that "[t]he arbitrator should be empowered to grant whatever relief would be available in court under law or in equity."  JA95.  As explained above, the enforceable waiver of punitive damages and the requirement that the parties bear their own fees validly limited the relief that "would be available in court," given the agreement of the parties.  *See supra* Section II.A.

That conclusion is further confirmed by the AAA's *own* interpretation of Principle 14 (which the AAA cited in its Waiver Letters),

expounded upon in the Reporter's Comments published along with the

Due Process Protocol:

> The intent [of the Principle] is to make clear that arbitrators deriving their authority from Consumer contracts should enjoy *the same authority courts have to fashion relief . . . . Contractual limitations of damages may limit the authority of arbitrators in the same fashion that they limit judicial remedies.* It is possible that an award of damages in excess of a contractual limit would be vacated under pertinent statutory standards or common law principles.

JA122 (emphasis added).

Therefore, the clear meaning of Principle 14 is not that <u>*all*</u> possible

remedies must be available during *all* consumer arbitrations, as the AAA

administrator insisted. Rather, Principle 14 provides only that remedies

that would otherwise "be available in court" should also be available

during the arbitration, and the same principles that may contractually

limit the availability of damages in court may limit their availability in

arbitration. Put another way: where a validly entered consumer contract

provides for limited remedies, and that limitation would have been

effective in court, Principle 14 requires that the same limitation must

also be effective in the arbitration. This is in harmony with the Supreme

Court's approach to enforcement of arbitration agreements under the

FAA: "if the contract says 'no punitive damages,' that is the end of the

matter." *Mastrobuono*, 514 U.S. at 56–57.

-43-

Once again, the district court was presented with this argument but failed to address it *at all*.  Instead, the district court merely quoted the portion of the AAA's commentary stating that arbitrators "should enjoy the same authority courts have to fashion relief, including awarding attorney's fees and punitive damages," and concluded summarily that "the AAA's request that Defendant waive its damage limitation provision [was] consistent with a reasonable interpretation of Principle 14 of the Protocol, and the decision did not violate the Defendant's contractual rights."  JA11.  The district court ignored the AAA's own statement that "[c]ontractual limitations of damages may limit the authority of arbitrators in the same fashion that they limit judicial remedies," which shows that the agreement's valid contractual limitations on remedies were not a violation of the AAA's Due Process Protocol, even assuming the parties had consented to application of that Protocol.

## III.  The District Court Erred by Failing to Uphold the Parties' Bargained-for Severance Provision

Finally, even assuming that (1) the AAA administrator's decision regarding the validity of the challenged provisions was properly within his authority to decide and was correct and (2) the invalidity of those provisions precluded arbitration, the district court nevertheless erred by failing to honor the intent of the parties and effectuate the purposes of

the FAA through severing the purportedly invalid provisions and compelling arbitration under a modified agreement.

Even where a term within a contract is found to be unconscionable, "the appropriate remedy is ordinarily to deny effect to the unconscionable term," rather than voiding the entire contract. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 288 (3d Cir. 2004). That is especially true when the contract at issue is an arbitration agreement, given the strong federal policy in favor of arbitration. *See Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 548 (D.N.J. 2013) (noting that the "liberal federal policy favoring arbitration agreements" encourages severance).

Severability in this case is further required by the express severability clause contained in the parties' agreement, which states:



JA149. In fact, this Court has held that a severability clause substantively identical to the clause in the agreement here is "clear and reflects the parties' intentions that unenforceable provisions would be severed from the contract and the remaining provisions would be enforced." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 285

(3d Cir. 2014) (granting severance under the following provision: "[t]he provisions of this Agreement are severable and, if any one or more provisions are determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions . . . shall nevertheless be binding and enforceable, and such illegal or otherwise unenforceable provisions shall be replace[d] by such valid provisions which come closest to the purpose and intent of this Agreement").

Thus, if nothing else, the "appropriate remedy" here was to sever the identified provisions and compel arbitration. *Parilla*, 368 F.3d at 288 ("where disregard of the offending conditions leaves a fair agreement that will accomplish the primary objective of the parties, enforcement of that agreement will normally be appropriate."); *see also Beery*, 953 F. Supp. 2d at 548 (D.N.J. 2013) (severing unenforceable pre-claim procedure provision, compelling arbitration, and dismissing case).

Despite that authority, the district court merely stated in a footnote that "[b]ecause this matter shall proceed in court, the Court does not address Defendant's arguments, in the alternative, that the damage limitation provision at issue is severable and does not preclude arbitration." JA11 n.13. That refusal to uphold the purposes of the FAA

-46-

and the intent of the parties' agreement through severance was additional error. This Court must reverse.

## CONCLUSION

For the foregoing reasons, MicroBilt respectfully requests that this Court vacate and reverse the decision of the district court, and remand to the district court with instructions to compel arbitration.

Dated: February 6, 2023        Respectfully Submitted,

/s/ Angelo A. Stio, III
ANGELO A. STIO, III
*Counsel of Record*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
301 Carnegie Center, Ste 400
Princeton, NJ 08543
(609) 452-1147
Angelo.Stio@troutman.com

*Attorneys for Defendant-Appellant MicroBilt Corporation*

-47-

## COMBINED CERTIFICATIONS

I hereby certify that:

1.     At least one of the attorneys whose names appear on the foregoing brief, including the undersigned, is a member of the bar of this Court, as required by Local Rule 28.3(d).

2.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 9,742 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

4.     The text of the electronic versions of this Brief and Joint Appendix filed on ECF are identical to the text of the paper copies filed with the Court.

5.     The electronic versions of the Brief and Joint Appendix filed on ECF were virus checked using Symantec, and no virus was detected.

6.     On this 6th day of February, 2023, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, and thereafter caused seven copies of the foregoing Brief to be served via United States First Class Mail, on the following:

Clerk's Office
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106-1790

Dated: February 6, 2023

/s/ Angelo A. Stio, III
ANGELO A. STIO, III

145761939