*In The*

# United States Court of Appeals
### *for the*
# Third Circuit

———————————

## Case No. 22-3135

### MARIA DEL ROSARIO HERNANDEZ
*Plaintiff-Appellee*

v.

### MICROBILT CORPORATION
*Defendant-Appellant*

———————————————
*Appeal from The United States District Court*
*for the District of New Jersey at C.A. No. 3:21-cv-04238*

———————————————————————

## BRIEF OF APPELLEE MARIA DEL ROSARIO HERNANDEZ

———————————————————————

FRANCIS MAILMAN SOUMILAS, P.C.
James A. Francis
John Soumilas
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600

**Attorneys for Appellee**
**Maria Del Rosario Hernandez**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................... iii

I.      INTRODUCTION .............................................................................1

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW..........................2

III.    STATEMENT OF THE CASE ...........................................................3

        A.      Factual Background And Nature Of The Claim ...................................3

        B.      The Agreement To Arbitrate ..................................................4

        C.      Proceedings In The District Court And Before AAA ..........................6

        D.      The District Court's Decision ...........................................10

IV.     SUMMARY OF THE ARGUMENT..................................................12

V.      STANDARD OF REVIEW.............................................................14

VI.     ARGUMENT....................................................................................15

        A.      This Case Presents No Question Of Arbitrability Of The Claim
                Or Validity Of The Arbitration Agreement .........................................15

        B.      The District Court Properly Deferred To AAA's Interpretation
                Of Its Own Rules And Policies ...........................................19

        C.      The District Court Applied The Arbitration Agreement
                According To Its Unambiguous Terms Requiring Compliance
                With AAA Rules ................................................................24

        D.      This Court Should Not Rewrite MicroBilt's Arbitration
                Provision, Which By Its Own Terms Requires AAA
                Administration, Or Litigation Following AAA Refusal ....................30

                1.      No Arbitration of Hernandez's Claims Can Proceed in
                        Accordance with AAA Rules under the Agreement As
                        Drafted ..................................................................31

i

2.    The Plain Language of the Arbitration Provision
        Prohibits MicroBilt's Proposal for Partial Severance...............34

VII.  CONCLUSION................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
  513 U.S. 265 (1995)..................................................................................29

*Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Tp.*,
  31 F. Supp. 2d 389 (D.N.J. 1998) .......................................................35

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
  595 F. Supp. 3d 1195 (M.D. Fla. 2022)........................................26, 33

*Ciccio v. SmileDirectClub, LLC*
  2 F.4th 577 (6th Cir. 2021) .......................................16, 17, 18, 29, 32

*Cortez v. Trans Union, LLC*,
  617 F.3d 688 (3d Cir. 2010) ...................................................................4

*Dean v. Heritage Healthcare of Ridgeway, LLC*,
  759 S.E.2d 727 (S.C. 2014) ..................................................................32

*Delta Funding Corp. v. Harris*,
  189 N.J. 28 (2006) .................................................................................23

*Dockser v. Schwartzberg*,
  433 F.3d 421 (4th Cir. 2006) ................................................................17

*Eliasieh v. Legally Mine, LLC*,
  2020 WL 1929244 (N.D. Cal. Apr. 21, 2020)......................................24

*Figueredo-Chavez v. RCI Hosp. Holdings, Inc.*,
  574 F. Supp. 3d 1167 (S.D. Fla. 2021) ................................................33

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007) .................................................................25

*Forby v. One Techs., LP*,
  ___ F. Supp. 3d ___, 2022 WL 2871815 (N.D. Tex. July 21, 2022)......24

*In re G-I Holdings, Inc.*,
  755 F.3d 195 (3d Cir. 2014) .................................................................35

*Great Western Mortgage Corp. v. Peacock*,
   110 F.3d 222 (3d Cir. 1997) ...............................................................20

*Greco v. Uber Techs., Inc.*,
   2020 WL 5628966 (N.D. Cal. Sept. 30, 2020)...........................24, 31

*Green v. U.S. Cash Advance Illinois, LLC*,
   724 F.3d 787 (7th Cir. 2013) ..............................................................32

*Heisman v. Wyndham Vacation Resorts, Inc.*,
   2021 WL 1138125 (D.N.J. Mar. 22, 2021) ..............................18, 26

*Isko v. Engelhard Corp.*,
   367 F. Supp. 2d 702 (D.N.J. 2005)......................................................35

*Jaludi v. Citigroup*,
   933 F.3d 246 (3d Cir. 2019) ................................................................14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995)................................................................................25

*Morales v. Sun Constructors, Inc.*,
   541 F.3d 218 (3d Cir.2008) .................................................................19

*Morgan v. Sundance, Inc.*,
   ___ U.S. ___, 142 S. Ct. 1708 (2022)....................................14, 15, 30

*Oesterle v. Atria Mgmt. Co., LLC*,
   2009 WL 2043492 (D. Kan. July 14, 2009) ......................................32

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
   368 F.3d 269 (3d Cir. 2004) ................................................................34

*Pennbar Corp. v. Ins. Co. of N. Am.*,
   976 F.2d 145 (3d. Cir. 1992) ...............................................................36

*Polimaster Ltd. v. RAE Systems, Inc.*,
   931 F.3d 832 (9th Cir. 2010) ..............................................................28

*Preston v. Ferrer*,
   552 U.S. 346 (2008)..............................................................................29

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
   673 F.3d 221 (3d Cir. 2012) ...............................................................23

*Stanley v. A Better Way Wholesale Autos, Inc.*,
   2018 WL 3872156 (D. Conn. Aug. 15, 2018)....................................33

*Szuts v. Dean Witter Reynolds, Inc.*,
   931 F.3d 830 (11th Cir. 1991) ...........................................................28

*Trans Union, LLC v. Ramirez*,
   141 S.Ct. 2190 (2021)...........................................................................3

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014) ...............................................................35

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   921 F. Supp. 2d 317 (D. Del. 2013)....................................................36

*Waters v. Vroom Inc.*,
   2023 WL 187577 (S.D. Cal. Jan. 13, 2023) ...............................24, 26

## <u>Statutes</u>

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq*.......................3, 4, 5, 6

   15 U.S.C. §§ 1681n.........................................................................5, 6

   15 U.S.C. §§ 1681o.............................................................................6

Federal Arbitration Act ("FAA")...............................................10, 14, 29, 32

   FAA § 3..............................................................................................26

## <u>Other Authorities</u>

AAA Rule 1(d)..........................................................................11, 27, 31

AAA Rule R-1(a) ...............................................................................7, 31

AAA Rule R-1(d)................................................................7, 19, 21, 33

## I.   <u>INTRODUCTION</u>

Appellant MicroBilt Corporation ("MicroBilt") contends that the District Court's decision "disregards," "nullifies" and "sets aside" a valid agreement to arbitrate, but even a cursory review of the decision below shows that the opposite is true.  The District Court faithfully applied the terms of the arbitration agreement MicroBilt itself drafted, along with the rules of the American Arbitration Association ("AAA") which MicroBilt chose to explicitly incorporate into the agreement by reference.

The result reached below is consistent with both the agreement and AAA rules, and thus was entirely foreseeable to MicroBilt. As set forth in AAA rules, the arbitration agreement was subject to an *administrative* review by AAA for compliance with its Consumer Rules and Consumer Due Process Protocol.  AAA found that MicroBilt's agreement contained a substantive deviation from the Consumer Due Process Protocol, and declined to administer the dispute unless MicroBilt waived the noncompliant provisions.  MicroBilt refused to do so, and therefore, this case returned to court consistent with the express terms of the arbitration provision.

Neither the District Court nor AAA ever found that the arbitration agreement itself was invalid – to the contrary, at each step the agreement has been enforced according to its terms as drafted. Thus, there is also no basis to apply the severance

provision of the arbitration agreement, which applies only if the agreement is invalid or unenforceable.  And in any event, application of the severance provision would lead to the same result, because it calls for severance of the arbitration provision as a whole and the litigation of claims in court, not for the partial severance MicroBilt now seeks.

MicroBilt chose to draft the arbitration agreement by incorporating AAA rules which call for administrative review, and must now live with the result.  The court below properly rejected MicroBilt's effort to avoid the consequences of its own arbitration agreement, and its decision should be upheld in full.

## II.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.    Did the District Court err by applying the plain language of an arbitration agreement which explicitly incorporated by reference AAA rules, and contemplated review by a AAA administrator of arbitration agreements for compliance with the AAA Consumer Rules and Consumer Due Process Protocol?

2.    Did the District Court err by deferring to AAA's interpretation of its own Consumer Rules and Consumer Due Process Protocol requiring that arbitrators be empowered to award any remedies which would be available in a court of law?

3.    Did the District Court err by declining to consider a severance provision which applies only where the arbitration agreement is invalid or unenforceable, where it found the agreement valid and enforceable by its terms as drafted?

## III.    STATEMENT OF THE CASE

**A.    Factual Background And Nature Of The Claim**

In November 2020, Hernandez applied for a loan through Oasis1 Marketing, an online lender offering installment loans of $100-$1,000.  Dist. Ct. ECF 1, Compl. at ¶ 27;  https://www.oasis1marketing.net/Default.aspx.  REDACTED

REDACTED

REDACTED    JA127-128.

The only document Hernandez walked away with was an email stating that her request was denied because MicroBilt's "Instant Bank Verification process that you completed has come back with a flag that you are on the Federal Government OFAC Watch List." JA3; Dist. Ct. ECF 1 at ¶ 36.[1] She eventually learned that the report contained an OFAC record for an individual with the same common first and last name, but with years of birth in 1971 and 1958 – far different from her year of birth of 1989.  JA3; Dist. Ct. ECF 1 at ¶¶ 32-33.

Numerous courts, including this Court, have found that selling OFAC records, which indicate to creditors that the individual is a terrorist, drug trafficker, or other

---

[1] REDACTED    (JA130), but that is a disputed factual issue not before this Court.  And regardless of any credit denial, the U.S. Supreme Court has found that simply disseminating a "possible" OFAC match about a consumer to a third party causes reputational harm similar to defamation, and upheld the imposition of statutory and punitive damages under the FCRA even when no credit denial on the basis of the OFAC record is proved.  *Trans Union, LLC v. Ramirez*, 141 S.Ct. 2190, 2209-11 (2021).

criminal who is legally ineligible to do business in the United States, by using only a name, and disregarding available dates of birth, is "reprehensible" and a willful violation of applicable law. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 707-08, 723 (3d Cir. 2010).[2] Hernandez therefore brought suit in the U.S. District Court for the District of New Jersey, asserting that MicroBilt's sale of an inaccurate OFAC record to a third party using name-only matching logic was in willful violation of the Fair Credit Reporting Act ("FCRA") requirement that consumer reporting agencies such as MicroBilt assure the maximum possible accuracy of information concerning the individual to whom the report relates. Dist. Ct. ECF 1; *Cortez*, 617 F.3d at 707-08.

**B.    The Agreement To Arbitrate**

REDACTED

REDACTED

REDACTED

REDACTED

---

[2] MicroBilt's argument that the report it prepared and disseminated about Hernandez is purportedly not a consumer report governed by the FCRA was not before the District Court below, and in any event is foreclosed entirely by this Court's longstanding precedent holding that OFAC records provided to prospective creditors are regulated by the FCRA, regardless of any attempt to disclaim FCRA coverage through private contractual arrangements. *Cortez*, 617 F.3d at 707-08.

[3]    For purposes of this appeal, Hernandez does not contest that the Terms & Conditions, including the arbitration provision, apply.

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED

REDACTED

REDACTED

REDACTED                                          15 U.S.C.

§§ 1681n and o (in the case of a successful action, any person who fails to comply

REDACTED

REDACTED

REDACTED    . JA144-149.

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**C.    Proceedings In The District Court And Before AAA**

Hernandez filed her Complaint on March 5, 2021, seeking the full remedies available under the FCRA, including actual damages, statutory damages of $100 to $1,000, punitive damages, and reasonable attorneys' fees and costs. JA4; Dist. Ct. ECF 1 at pp. 8-9; 15 U.S.C. §§ 1681n, 1681o.

MicroBilt sought an extension of time to answer or otherwise respond to the Complaint, and the Parties subsequently engaged in detailed discussions regarding Hernandez's claim, including MicroBilt's assertion that an arbitration agreement applies, among other bases for dismissal. *See* Dist. Ct. ECF 23 at pp. 3-5; Dist. Ct. ECF 23-1 at ¶ 5.  Ultimately, Hernandez elected to proceed in arbitration, and voluntarily dismissed the action on September 21, 2021.  JA4.  She filed her claim with AAA three days later, on September 24, 2021. *Id.*[4]

Consistent with its standard and publicly available procedures, AAA then reviewed the Agreement to determine whether it complied with its "Consumer Due Process Protocol" and "Consumer Arbitration Rules." Under the Consumer

---

[4]  Even before responding to Hernandez's claim in arbitration, MicroBilt filed a Motion for Attorneys' Fees and Costs in the District Court on October 20, 2021, claiming that, notwithstanding multiple requests for extensions made with the consent of both parties, *Hernandez* unnecessarily duplicated proceedings.  Dist. Ct. ECF 20.  As detailed her response, Hernandez acted in good faith at all times and sought to avoid wasting judicial and party resources.  Dist. Ct. ECF 23.  The Motion for Attorneys' Fees and Costs has been terminated in light of subsequent proceedings.  Dist. Ct. ECF 33.

Arbitration Rules (which the Agreement explicitly states will govern any arbitration in this matter), AAA states that it:

> will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. **Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.**

JA58 (R-1(d)) (emphasis added).

These Consumer Arbitration Rules specify that where an arbitration agreement provides for AAA rules, the parties "shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." JA57 (R-1(a)). These rules reserve to the AAA the right to decline to administer an arbitration for multiple reasons, including noncompliance with its Consumer Due Process Protocol. *Id.* at JA58 (R-1(d)); JA80 (R-54, R-55). The rules also specifically allow for the "authority and duties of the AAA" to be "carried out through such of the AAA's representatives as it may direct" and that the AAA has discretion to "assign the administration of an arbitration to any of its offices" and that "AAA will have the final decision on…which AAA staff members will administer the case". JA58 (R-1(b)); JA65 (R-13).

On October 28, 2021, AAA sent a letter to the Parties indicating that the Agreement drafted by MicroBilt "has a material or substantive deviation" from

AAA's Consumer Due Process Protocol and/or Consumer Arbitration Rules.  ECF JA150-151.  AAA indicated that it would decline to administer the dispute unless MicroBilt agreed to waive these provisions.  *Id.*

MicroBilt did not substantively respond, but instead demanded to know "(1) who specifically conducted the review of the arbitration agreement; and (2) who is requesting that these provisions be waived." JA33. AAA responded on November 22, 2021, reiterating that the determination was made "by the AAA" as part of its standard review of arbitration agreements pursuant to AAA rules.  JA153-154. AAA also stated its position that its rules require that a AAA arbitrator is "authorized to award any damages that could be available in court[.]" *Id.*

On December 8, 2021, AAA notified the parties that it was declining to administer the arbitration of Hernandez's claim.  JA40.  In light of its failure to conform its arbitration Agreement to AAA rules, AAA requested that MicroBilt remove reference to AAA rules from its agreement.  *Id.*

Following a subsequent communication by MicroBilt, AAA later reopened its file, and the parties conducted a conference call on December 17, 2021.  JA159-160. Both during the call, and in a January 14, 2022 letter memorializing the same, AAA affirmed that the limitation on damages contained in MicroBilt's arbitration Agreement was a material or substantial deviation from AAA's Consumer Due Process Protocol, and that "the AAA will not administer consumer disputes where

the arbitration agreement does not substantially and materially comply with the *Protocol*." *Id.* AAA further reiterated that pursuant to AAA Rules, "if AAA declines to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." JA160.

On February 11, 2022, AAA again confirmed that it was declining to administer Hernandez's claim, stating that "we have not received [MicroBilt]'s waiver of the provision of the party's arbitration agreement that violates the Consumer Due Process Protocol; accordingly, we have closed our file on this matter." JA46.

Even in the face of AAA's clear statement that the claim could not be arbitrated under Hernandez's Agreement according to AAA rules, Hernandez requested that the parties proceed before an alternate arbitrator with the agreement as drafted. JA44.   Hernandez responded that, in light of the language of the Agreement requiring compliance with AAA rules, and AAA's position that the Agreement departs from those rules, the only option was a return to court proceedings. JA162.   MicroBilt nonetheless moved forward with engaging an alternate arbitrator.  JA47-48.  Hernandez reiterated her position that a return to court was the only possible result under the terms of the agreement, and MicroBilt's Second Motion to Compel Arbitration and Dismiss Plaintiff's Complaint followed.

**D.    The District Court's Decision**

On October 25, 2022, following full briefing on MicroBilt's Second Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, Chief Judge Freda L. Wolfson issued an order denying the motion. JA3-12. The District Court concluded that there is no basis under the FAA to compel arbitration in this matter, because Hernandez "has not failed, neglected to, or otherwise refused to arbitrate…. To the contrary, Plaintiff has followed the rules of the AAA, which were incorporated under the Arbitration Agreement, and those rules allow her to resume litigation here." JA6-7. The District Court confirmed that the parties agreed to arbitrate in accordance with AAA rules, and that there is no dispute that AAA's Consumer Rules and Consumer Due Process Protocol apply to the claim.  JA7.  After summarizing the procedural history and the relevant provisions of the Consumer Rules and Consumer Due Process Protocol, the District Court noted that MicroBilt "offers no explanation as to why it is not obligated to follow AAA's rules and procedures." JA7-8. Like numerous other courts to address the failure by litigants to comply with AAA policies and procedures, the District Court found that "the declination of arbitration by the AAA due to [MicroBilt's] conduct relieves [Hernandez] from arbitration". JA8-9.

The District Court also considered and rejected MicroBilt's assertion that "threshold issues of arbitrability" are presented in this case that should have been

resolved by an arbitrator, rather than a AAA administrator.  Rather, it confirmed that MicroBilt's dispute here "does not center on the enforceability or validity of the parties' agreement …. but instead, it centers on the AAA's determination that the damage limitation provision violated its own rules." JA9.  Because the AAA's determination "was an administrative decision that did not touch upon the enforceability of the agreement itself" and thus need not be made by an arbitrator. JA10.

Next, the District Court considered and rejected MicroBilt's assertion that the arbitration should proceed with an alternative arbitrator, finding that "[t]he issue before the Court is not whether Plaintiff may proceed to arbitrate in another forum under the AAA's rules, but whether she can be compelled to arbitrate at all." JA10. Because AAA Consumer Rule 1(d) permits either party to proceed with litigation after AAA declined to administer an arbitration, compelling arbitration before a different arbitrator "would contravene the intent of the parties to be bound by the rules incorporated by their agreement."  JA11.

Finally, the District Court rejected MicroBilt's challenge to the AAA's substantive decision that the arbitration agreement here does not comply with AAA Consumer Rules and Consumer Due Process Protocol.  JA11. First, the District Court found that "AAA has the power to interpret and apply its own rules" including the discretion to decline to administer arbitrations.  *Id.* It went on to confirm that

AAA's request that MicroBilt waive its damages limitation provision is "consistent with a reasonable interpretation of Principle 14 of the [Consumer Due Process] Protocol" which intends "'to make clear that arbitrators deriving their authority from Consumer contracts should enjoy the same authority courts have to fashion relief, including awarding attorney's fees and punitive damages.'" *Id.* (quoting Consumer Due Process Protocol).

## IV.    SUMMARY OF THE ARGUMENT

The District Court did not err by declining to compel arbitration where Hernandez had already submitted her claim to the AAA consistent with the terms of the arbitration Agreement, and the AAA acted within its discretion to decline to administer the dispute.

First, the District Court concluded that a valid agreement to arbitrate exists here, and that there is no dispute that Hernandez's claim is arbitrable. Neither the AAA nor the District Court found the Agreement invalid or made any decision touching on "gateway" questions of validity or arbitrability. There is no dispute that the AAA's Consumer Rules and Consumer Due Process Protocol apply, and that those rules provide for an administrative review of arbitration agreements for compliance before the AAA will accept a dispute. Far from negating the parties' Agreement here, the District Court enforced the Agreement according to its terms, which MicroBilt concedes are unambiguous, and which incorporate the AAA's

procedural rules and provide for substantial discretion by the AAA. Like numerous other courts presented with a respondent's failure to comply with the AAA's procedural rules, the District Court properly concluded that Hernandez satisfied her obligations under the Agreement and may return to litigate in court consistent with the AAA's rules.

Second, the District Court did not err by deferring to the AAA's interpretation and application of its own rules and procedures. To the contrary, the District Court's decision gives full effect to the plain and unambiguous language of the arbitration Agreement which provides for an arbitration under the rules of the AAA. Those rules and procedures vest the AAA with broad discretion in administration of arbitrations, including to designate the office and staff overseeing a claim, to interpret AAA rules and procedures, and to decline to administer disputes for noncompliance. There is no ambiguity or conflict in these terms that requires harmonization, and to the extent that there was, the District Court provides that harmony by enforcing the arbitration Agreement and giving effect to its terms as written by MicroBilt. The District Court did not set aside or invalidate any portion of the Agreement, but simply found that the AAA's request that MicroBilt waive the limitations on recovery set forth in the arbitration provision (but not elsewhere in the Terms & Conditions) was consistent with a reasonable interpretation of the AAA Consumer Due Process Protocol to which MicroBilt expressly agreed.

Finally, the District Court properly declined to rewrite the terms of the arbitration Agreement, which provides for a return to litigation if the AAA declines to administer the dispute, and which only permits severance of the arbitration provision if the provision is found invalid.

## V.    STANDARD OF REVIEW

This Court exercises plenary review of a district court's order on a motion to compel arbitration. *Jaludi v. Citigroup*, 933 F.3d 246, 251 n. 7 (3d Cir. 2019). Because such an order "is in effect a summary disposition of whether or not there had been a meeting of the minds on the agreement to arbitration" such a motion should be granted only if the party moving to compel is entitled to judgment as a matter of law, after viewing facts and drawing inferences in favor of the non-moving party. *Id.* (quoting *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017).

While U.S. courts recognize a "policy favoring arbitration" flowing from the Federal Arbitration Act ("FAA"), the Supreme Court has unanimously clarified that this policy "'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S. Ct. 1708, 1713 (2022) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)).    Rather, this policy is one that makes "'arbitration agreements as enforceable as other contracts, but not more so'" and is

about "treating arbitration contracts like all others, not about fostering arbitration." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, (1967)).   "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*

## VI.    **ARGUMENT**

The District Court properly refused to do what it would not do with any other contract: rewrite the terms of the agreement MicroBilt drafted and repeatedly refused to modify at the AAA's request, to achieve MicroBilt's preferred result.  The District Court's decision interprets the contract according to its plain terms, consistent with applicable legal authority, and its decision should be upheld in full.

### A.    **This Case Presents No Question Of Arbitrability Of The Claim Or Validity Of The Arbitration Agreement**

As the District Court recognized, the AAA decision MicroBilt challenges does not address the arbitrability of Hernandez's claim, nor the validity of the Agreement itself.  Far from "nullifying" the arbitration Agreement as MicroBilt accuses, the District Court has enforced the terms of the Agreement as drafted, and MicroBilt identifies no error in the decision below.

MicroBilt's citations and case law regarding delegation of "gateway" issues of arbitrability, validity, and scope of agreements to an arbitrator are entirely irrelevant here, because the dispute at issue is not about arbitrability or validity of the Agreement. AAA here repeatedly emphasized that its refusal to administer the

dispute is not a decision regarding the arbitrability, the validity of the arbitration Agreement, nor of the legal enforceability of the damage limitation provision. JA150, JA159. Rather, the determination reflects AAA policy, to which MicroBilt affirmatively consented and agreed to be bound, by incorporating AAA rules into the Agreement it drafted.

MicroBilt relies heavily on *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021), but that case involved a dispute regarding the arbitrability of a claim, and not, as here, AAA's determination that the text of an arbitration agreement does not comply with AAA rules. In *Ciccio*, AAA determined following administrative review that its Healthcare Due Process Protocol and Healthcare Policy Statement applied to the claim. *Id.* at 580. These specialized AAA rules required either a court order or execution of post-dispute agreement in for a dispute to be arbitrable. *Id.* The defendant disputed that those healthcare-specific rules applied, and asserted that the claim was arbitrable without following the procedures set forth in the specialized rules. *Id.*[5]

---

[5] A truly comparable dispute in this case would be if MicroBilt had disagreed with AAA's determination that the Consumer Arbitration Rules and Consumer Due Process Protocol apply to Hernandez's claim. If MicroBilt had made such an assertion, AAA rules provide for the appointment of an arbitrator to resolve the dispute. JA59 (R-1(e)). MicroBilt has not made this assertion, and does not do so now.

By contrast here, there is no dispute that AAA's Consumer Due Process Protocol and Consumer Arbitration Rules apply to Hernandez's claim. And more fundamentally, the dispute in this case is not whether the claim is arbitrable – *e.g.,* whether the parties agreed to arbitrate or whether the claim falls within the scope of the Agreement. Rather, the question is whether AAA is willing to administer the dispute. AAA, within its discretion as contemplated by AAA rules, declined to do so because it found that the limitation of remedies "violates the Consumer Due Process Protocol[.]" JA150; JA159. And as the *Ciccio* court recognized, a different result is required where the dispute is not a gateway arbitrability question. 2 F.4th at 583.[6] It furthermore confirmed that "AAA may choose for *itself* which claims it will arbitrate" and contrasted its decision to another court which "simply defer[red] to the AAA administrator's interpretation of their own rules" where the question did not address arbitrability – "what the Agreement itself means." *Id.* at 585, 587 (contrasting its decision to *Dockser v. Schwartzberg*, 433 F.3d 421 (4th Cir. 2006)).

---

[6]   Both the *Ciccio* court and MicroBilt selectively quote AAA rules regarding submission of "any disputes" to the arbitrator. 2 F.4th at 584; Dist. Ct. ECF 36-11 at p. 24. But the text of the rule states that "**AAA has the discretion** to apply or not to apply the *Consumer Arbitration Rules*, and **the parties** are able to bring any disputes **concerning the application or non-application of the Rules** to the attention of the arbitrator." JA54 (emphases added). But this is not a dispute concerning the "application or non-application" of the Consumer Arbitration Rules – everyone agrees that the Consumer Rules apply. And the dispute at issue is not between "the parties" – but rather between AAA and MicroBilt concerning AAA's willingness to administer Hernandez's claim.

Because the issue here is not what MicroBilt's Agreement *means*, but whether AAA is willing to administer a dispute under the Agreement, by its own terms *Ciccio* does not support MicroBilt's position. The District Court therefore did not err in finding *Ciccio* to be "in stark contrast to the procedural issues in the present case." JA10.

The fact that AAA's application of its rules had the effect of preventing an arbitration here does not make the decision one of arbitrability or validity of the Agreement. As the District Court noted, courts regularly uphold AAA's application of its own rules which prevent arbitrations from occurring. JA8-9 & fn.7-8 (citing, *inter alia*, *Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 (D.N.J. Mar. 22, 2021) and *Roach v. BM Motoring, LLC*, 228 N.J. 163, 181 (2017)).

MicroBilt's argument that the District Court "ignored" the provision of AAA's Consumer Rules delegating questions of validity of agreements to an arbitrator is simply incorrect. The District Court found that validity was not at issue here, explicitly noting that "the AAA's determination that the Arbitration Agreement violated its rules was an administrative determination that did not touch upon the enforceability of the agreement itself." JA10. Thus, neither AAA nor the District Court made any finding regarding the validity of the arbitration Agreement here, and indeed all participants (including Hernandez by filing the arbitration in the first place) have treated the Agreement as valid. Rather, the District Court properly found that the AAA determination MicroBilt challenges was not regarding legal validity

18

of the Agreement, but rather AAA's decision within its discretion to accept or decline an arbitration pursuant to the rules MicroBilt knowingly incorporated into its Agreement.

**B.    The District Court Properly Deferred To AAA's Interpretation Of Its Own Rules And Policies**

The AAA rules that MicroBilt chose to adopt in the Agreement specifically contemplate the procedure followed here:  an administrative review of arbitration clauses for substantial compliance with AAA due process standards *before* a claim is submitted to an arbitrator.  It was MicroBilt's choice to incorporate AAA rules into its Terms & Conditions, and it cannot now complain that AAA and the District Court applied them as written.  *See, e.g. Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir.2008) ("[E]very contracting party has the duty to learn and know the contents of the contract before he [or she] signs and delivers it.").

As the District Court recognized, AAA's Consumer Arbitration Rules plainly state that AAA will only "accept cases *after the AAA reviews the parties' arbitration agreement* and **if** the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the Consumer Due Process Protocol."  JA58 (R-1(d) (emphasis added).   MicroBilt affirmatively chose to incorporate AAA Consumer Rules into its Agreement, which provide AAA with substantial administrative discretion to decline to administer disputes, and MicroBilt must now live with the result of the process it selected.

19

MicroBilt claims that this Court's decision in *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3d Cir. 1997) mandates that disagreements regarding compliance with AAA rules must be resolved by an arbitrator, despite the parties' explicit agreement to a different procedure.  As the District Court properly found, however, *Great Western* is "easily distinguishable from the current dispute" because *Great Western*, unlike this case, *did* involve a dispute about the validity and enforceability of the arbitration agreement.  JA9 fn. 11.  Furthermore, the language from *Great Western* that MicroBilt emphasizes is not contrary to the result here – there is no dispute that Hernandez's claim is arbitrable, and there is no question that AAA's decision to decline to administer the claim was "decided at arbitration." Nothing in *Great Western* requires an arbitrator to be appointed to make a purely administrative decision.  MicroBilt was on notice that its arbitration Agreement was subject to *administrative* review for compliance with the AAA's Consumer Due Process Protocol, separate from legal validity, and chose to submit to that process. JA10.

In an effort to manufacture reversible error, MicroBilt expends a portion of is brief arguing that the District Court improperly concluded that the limitations on recovery set forth in its arbitration Agreement were invalid.  Br. of Appellant at Section III.  This argument is a waste of ink, and of this Court's time, because the District Court came to no such conclusion. JA7 ("I am satisfied that there was a valid

agreement to arbitrate."). MicroBilt's quarrel is instead with the District Court's confirmation that the AAA's administrative determination that the damages limitation materially deviates from the AAA's Consumer Due Process Protocol was "consistent with a reasonable interpretation of Principle 14 of the Protocol[.]" JA11.

The legal validity of the damages limitation provision of MicroBilt's Agreement was not before the AAA, and is not before this Court now since no party has appealed the District Court's finding of a valid agreement to arbitrate. The AAA repeatedly made clear that the result of its administrative review was "not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable[.]" JA150. Rather, the AAA administrator made clear in his communications that the damages limitation is a "violation of the AAA's Consumer Due Process Protocol[.]" *Id.*; JA153. The administrator also repeatedly explained that review for substantive compliance "with AAA's minimum due process standards in consumer arbitrations" is a standard part of AAA administration, as set forth in Consumer Rule R-1(d). JA159; JA58 (Rule R-1(d)).

The District Court's review likewise made clear that it did not find the arbitration Agreement invalid in any way, instead explicitly affirming that there is a valid agreement to arbitrate here, notwithstanding the presence of the damages

limitation provision. JA7.[7]  Its review of the AAA's substantive determination was solely limited to whether the AAA's administrative decision was a reasonable application of the AAA's rules and procedures.  JA11.

MicroBilt argues that the limitation of damages is consistent with Principle 14 of the Consumer Due Process Protocol, because Principle 14 requires that the arbitrator be empowered to "grant whatever relief would be available in court under law or in equity."  Br. of Appellant at p. 51.  Notably, MicroBilt selectively quotes the Reporter's Comment to Principle 14, which indicates that Principle 14 is intended to give arbitrators "the same authority courts have to fashion relief, *including awarding attorney's fees and punitive damages*."  JA122 (emphasis added).

MicroBilt claims that its purportedly valid limitation on damages means that Hernandez would be unable to recover punitive damages and attorneys' fees in court. Br. of Appellant at pp. 51-52.  Yet again, MicroBilt misrepresents the facts here: REDACTED

REDACTED

REDACTED. JA144-148.  It was therefore reasonable for the AAA to conclude that the arbitration provision imposes

---

[7]  Though Hernandez presented the District Court with authority indicating that damages limitations are evidence of an unconscionable and unenforceable arbitration agreement (Dist. Ct. ECF 41-1 at pp. 13-14), she did not cross-appeal the District Court's conclusion.

limitations on recovery otherwise absent from the parties' contract, and limits the relief available in arbitration that would not exist in court or equity.

Separately, in light of the existence of Third Circuit and New Jersey authorities indicating that limitations on remedies are unconscionable, the AAA could have reasonably concluded that such limitations are unenforceable. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 115 (2006); *Quillon v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230-31 (3d Cir. 2012) ("[p]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy.").[8] This is particularly true since MicroBilt failed to cite any Third Circuit or New Jersey law in its letter to the AAA refusing to waive the provision. *See* JA155-158.

But even if the AAA was unreasonable in its interpretation of its own Rules and of the Protocol (which it was not), MicroBilt presents no argument, evidence, or authority that District Court was empowered to overturn the AAA's administrative decision.   As the District Court recognized, AAA reserves wide discretion to interpret and apply its own rules, including to decline to administer arbitrations for

---

[8]   To reiterate, Hernandez does not challenge the District Court's conclusion that there is a valid agreement to arbitrate here, but cites these authorities to demonstrate that there is a reasonable basis for the AAA's conclusion that the Agreement departs from its Consumer Due Process Protocol.

noncompliance. JA11 (citing Consumer Rules 53 and 55); JA80. Courts have repeatedly found that "AAA's ability to close an arbitration in its sole discretion and allow either party to proceed to court under the Consumer Arbitration Rules the Parties agreed to is dispositive" of subsequent efforts to compel arbitration. *Waters v. Vroom Inc.*, No. 22-cv-1101 TWR (AGS), 2023 WL 187577, at *5 (S.D. Cal. Jan. 13, 2023); *Greco v. Uber Techs., Inc.*, No. 4-20-02698, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 30, 2020); *Forby v. One Techs., LP*, ___ F. Supp. 3d ___, 2022 WL 2871815, at *11 (N.D. Tex. July 21, 2022); *Eliasieh v. Legally Mine, LLC*, No. 18-03622, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) ("Defendant offers no explanation as to why it is not obligated to follow AAA's rules and procedures. The bottom line is that AAA terminated the arbitration due to Defendant's conduct.").

By choosing to incorporate the AAA's rules providing such broad discretion into the arbitration Agreement here, MicroBilt affirmatively agreed to this discretion which included the right the evaluate arbitration agreements for substantive compliance with the Consumer Due Process Protocol.

## C.    The District Court Applied The Arbitration Agreement According To Its Unambiguous Terms Requiring Compliance With AAA Rules

The District Court's decision is fully rooted in Supreme Court precedent recognizing that arbitration agreements must be "enforced according to their terms" which can include specifying the rules by which arbitration will be conducted.  JA7

(quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) and *Volt Info. Scis., Inc. v. Board of Tr.*, 489 U.S. 468, 479 (1989)).

There can be no serious question that the arbitration Agreement here incorporates AAA rules by unequivocally stating that "[t]he arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association[.]" JA148.

Desperate to avoid the consequences of its own drafting choices, MicroBilt argues that the Agreement it crafted contains an ambiguity that must be resolved by an arbitrator. MicroBilt waived this argument by failing to raise it before the District Court - and indeed argued below that its agreement is "unambiguous." Dist. Ct. ECF 36-11 at p. 16; Br. of Appellant at p. 16; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007).[9] Even if properly raised, this argument is entirely ineffective, given that there is no conflict whatsoever between the parties agreeing to resolve disputes through arbitration, and application of AAA

---

[9] This argument is both waived and halfhearted – MicroBilt both argues that the agreement is ambiguous, yet also asserts that it is "not ambiguous." Br. of Appellant at p. 28 n.8. It cannot be both. MicroBilt failed to raise any argument based on ambiguity below, and cannot do so now.

In any event, to the extent an ambiguity exists, longstanding common law principles require that any ambiguous language be construed against the drafter to avoid an unintended or unfair result. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt.").

procedural rules.  Indeed, there is no dispute *between Hernandez and Microbilt* that could be submitted to an arbitrator – the relevant dispute is about AAA's willingness to administer Hernandez's claim, and is thus between MicroBilt and AAA.

In any event, Hernandez submitted her dispute with MicroBilt for resolution "in arbitration," and that is exactly what happened. *See, e.g. Heisman*, 2021 WL 1138125, at *3 (an arbitration "has been had" within the meaning of FAA § 3 where AAA declines to administer dispute); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195, 1202 n.8 (M.D. Fla. 2022) (same) (citing *Heisman*); *Waters v. Vroom Inc.*, No.  2023 WL 187577, at *3 (S.D. Cal. Jan. 13, 2023) (same).

Contrary to MicroBilt's protests, dispute resolution "by" "in" or "through" arbitration does not inherently mean "by an arbitrator," particularly in the face of AAA's longstanding and well-publicized rules and procedures which are incorporated in the Agreement.  MicroBilt's argument that the Agreement is purportedly "ambiguous as to whether [the parties] consented to allow a non-arbitrator AAA staff administrator to refuse to even appoint and arbitrator" is entirely foreclosed by the text of the AAA rules which put all parties on notice regarding AAA's administrative review process and AAA's reservation of discretion to its non-arbitrator staff. JA7-8 (summarizing relevant provisions).

As the District Court found, AAA administration is an essential term of the parties' agreement, and that such administration will be "carried out through such of

the AAA's representatives as it may direct" including assignment to any office and staff members the AAA chooses. JA7 (quoting AAA Consumer Rules). The return of Hernandez's claim to litigation is also explicitly contemplated by AAA Consumer Rule 1(d). As the District Court found, Hernandez "has followed the rules of the AAA, which were incorporated under the Arbitration Agreement, and those rules allow her to resume litigation here." JA6-7.

MicroBilt argues that the term of arbitration Agreement requiring resolution "exclusively by binding arbitration" is somehow in conflict with the term requiring that arbitration to be "in accordance with" AAA rules, and that the District Court erred by failing to harmonize these terms. But MicroBilt identifies no such conflict or inconsistency in need of harmonization (and indeed continues to assert that the agreement is unambiguous), because none exists. As the District Court recognized, parties are free to select through their arbitration agreements the rules by which such arbitrations will take place, and courts are bound to enforce those rule selection provisions. JA7 (quoting *Stolt-Nielsen* and *Volt*). To the extent any harmonization between the agreement to arbitrate and the selection of AAA rules was needed, that is exactly what the District Court's analysis does: finds a valid and enforceable agreement to arbitrate *under AAA Rules*.

MicroBilt fails to cite any authority permitting a party to avoid the application of the rules it chose to incorporate in an arbitration agreement. Rather, its cited cases

involve situations where a procedural term specifically set forth in the agreement directly conflicts with a default forum rule.  In *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.3d 830, 832 (11th Cir. 1991) the parties selected the AAA Securities Arbitration Rules, which permitted proceedings before fewer than three arbitrators in certain circumstances and with consent of the parties.  *Id.* at 832  But the text of the parties' agreement also explicitly stated that the arbitration would be before a panel of at least three arbitrations.  *Id.*  Furthermore, one party did not consent to proceed before two arbitrators as required under the relevant AAA rule.  *Id.* The decision of the *Szuts* court thus has little applicability here, where the alleged conflict is between a generalized agreement to arbitrate, and AAA's discretionary application of AAA Consumer Rules to which all parties have consented.  MicroBilt identifies no conflict between those rules and arbitration of Hernandez's claim, except its own refusal to comply with the rules.

*Polimaster Ltd. v. RAE Systems, Inc.*, 931 F.3d 832 (9th Cir. 2010) likewise does not involve a comparison between a generalized agreement to arbitrate and the rules of a chosen forum. Instead, *Polimaster* addressed an arbitration agreement that specifically required all claims to be resolved in the defendant's home forum. *Id.* at 837.  The court held that this term evidenced the parties' intent to conduct the arbitration in a particular way, even if it required inefficient proceedings, noting that "adherence to the parties' agreed-upon procedures is regularly enforced[.]" *Id.* at

841.[10]    Similarly, the District Court here adhered to the parties' agreed-upon selection of AAA rules.[11]

MicroBilt again attempts to turn to *Ciccio* for support, arguing that the Sixth Circuit's statement that "we can't read the AAA rules to preclude decision by an arbitrator" applies here.  Br. of Appellant at p. 44.  But as discussed above, the "decision" at issue in *Ciccio* was whether to apply AAA's healthcare-specific rules bearing on arbitrability. 2 F.4th at 586 ("[t]he fundamental question here is arbitrability").  There is no question of arbitrability for an arbitrator to determine here, nor any dispute regarding which AAA rules apply, only AAA's administrative choice not to arbitrate under the Agreement MicroBilt drafted.

Lacking any support for its claim that a party may force arbitration even where it fails to comply with AAA rules, MicroBilt turns instead to the "FAA's strong pro-arbitration presumption," but entirely fails to address recent U.S. Supreme Court authority making clear that the purpose of the FAA is to make "'arbitration

[10]    *Allied-Bruce Terminix Cos., Inc. v. Dobson* 513 U.S. 265 (1995) lacks any relevance to the issues in this case, since it involves conflict between a state antiarbitration statute and the FAA, not the interplay between a general agreement to arbitrate and the specific rules of the arbitration forum.

[11]    MicroBilt's citation to cases where selection of AAA rules presented apparent conflict with choice-of-law provisions in the arbitration agreement is unhelpful here, and in fact only serve to emphasize that courts enforce parties' agreements to incorporate AAA rules by reference. *Preston v. Ferrer*, 552 U.S. 346, 362 (2008) (giving effect to selection of AAA rules over inference based on choice of law provision).

agreements as enforceable as other contracts, but not more so'" and is about "treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 142 S. Ct. at 1713.

MicroBilt's argument boils down to an assertion that the parties agreed to arbitrate disputes *no matter what*, even when a party breaks the affirmatively-selected rules of the chosen forum. The plain language of the Agreement shows that this was not the case: the parties agreed to arbitrate "in accordance with the rules of the [AAA]." This selection of forum and rules is a binding contract no less enforceable than the agreement to arbitrate, and permits Hernandez to return to court under the circumstances of this case.

**D.    This Court Should Not Rewrite MicroBilt's Arbitration Provision, Which By Its Own Terms Requires AAA Administration, Or Litigation Following AAA Refusal**

Despite failing to identify any purported conflicting contractual terms to the District Court below, MicroBilt now asserts that the terms of the arbitration Agreement it unilaterally drafted should be "harmonized" (*e.g.*, rewritten) to achieve its preferred result. The District Court properly rejected MicroBilt's argument that Hernandez's claims should be compelled to arbitration before an alternate arbitrator, in light of the express terms of the Agreement. Those express terms likewise foreclose selective severance of the damages limitation, given that the existing

severance clause requires that the arbitration provision be found invalid and if applied results in severance of the arbitration clause as a whole.

1.  No Arbitration of Hernandez's Claims Can Proceed in Accordance with AAA Rules under the Agreement As Drafted

As the District Court found, the question presented here "is not whether [Hernandez] may proceed to arbitrate in another forum under the AAA's rules, but whether she can be compelled to arbitrate at all."  JA10.  Hernandez has fully complied with the intent of the parties here, by submitting her claim for arbitration with AAA.  The Agreement contains no requirement of arbitration in the event that AAA declines to administer the claim – indeed, Consumer Rule 1(d) incorporated by referenced into the Agreement allows Hernandez to proceed with litigation in this situation.   Furthermore, AAA rules state that administration *by AAA* is an essential term of any arbitration agreement that incorporates AAA rules.   JA57 (R-1(a)) (emphasis added). The District Court properly found that forcing Hernandez to arbitrate in another forum would be contrary to the expressed intent of the parties to be bound by AAA rules. JA11 (citing *Greco v. Uber Techs., Inc.*, No. 4-20-02698, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 30, 2020) ("Here, there is no need to appoint another arbitrator because the parties' original intent is clear: they meant to be governed by AAA rules, which allow the arbitrator to decline to arbitrate and the parties to then proceed with litigation.")).

MicroBilt fails to identify any error in the District Court's conclusion, and its cited authorities are unhelpful. *Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 733-34 (S.C. 2014) and *Oesterle v. Atria Mgmt. Co., LLC*, No. 09-4010-JAR, 2009 WL 2043492 (D. Kan. July 14, 2009) each involve application of the same healthcare-specific AAA rules at issue as *Ciccio*, and like *Ciccio* are irrelevant here where there is no dispute regarding arbitrability. *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787 (7th Cir. 2013) is likewise unhelpful, for multiple reasons. First, because the forum selected by the parties in *Green* was no longer accepting *any* arbitrations, in contrast to this case where the AAA exercised its discretion to decline to administer this specific dispute consistent with its published rules and procedures. 724 F.3d at 789. Second, unlike the AAA rules which state that AAA administration is an essential term of the parties' agreement where AAA rules are incorporated into arbitration agreements by reference (JA57), the rules of the chosen forum in *Green* permitted administration by other entities or individuals. *Id.* (agreement permitted administration "only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum."). Finally, the forum rules in *Green* specified that if the parties could not arbitrate in the chosen forum, they could seek "other remedies in accord with applicable law" which the *Green* court concluded embraced the FAA. *Id.* By contrast here, the AAA rules chosen by the parties explicitly state that if AAA

32

declines to administer the dispute, either party may return to litigation. JA58 (R-1(d)).

Indeed, numerous courts have found in analogous situations that respondents may not force consumers to arbitrate in an alternate forum after the AAA declines to administer a dispute due to the respondent's noncompliance with the AAA's rules. *See Figueredo-Chavez v. RCI Hosp. Holdings, Inc*., 574 F. Supp. 3d 1167, 1173 (S.D. Fla. 2021) ("Defendants cannot simply withhold compliance from the selected arbitrator because they disagree with its rulings, then come to this Court and have this case referred to a new arbitrator where they can relitigate issues that should have been decided by the AAA to begin with. The Court will not indulge Defendants' bald attempt to forum-shop their way to a more favorable arbitral forum."); *Bedgood*, 595 F. Supp. 3d at 1203-04 (AAA would be available if not for the respondent's noncompliance); *Stanley v. A Better Way Wholesale Autos, Inc.*, No. 3:17-cv-01215-MPS, 2018 WL 3872156, at *6 (D. Conn. Aug. 15, 2018) (declining to compel arbitration where responded "refused to play by the rules that it had itself agreed to.").

The AAA was in the best position to interpret and apply its own procedures and rules, and concluded that no arbitration is possible in accordance with those rules. The District Court's determination that this case should proceed to litigation must be upheld.

2.    The Plain Language of the Arbitration Provision Prohibits MicroBilt's Proposal for Partial Severance

Much as MicroBilt would like to rewrite the agreement here, the terms of the arbitration Agreement are also clear with respect to severance. First, the severance provision by its own terms only applies if the arbitration provision is found invalid or unenforceable. As discussed above, neither the District Court nor AAA has ever found the arbitration provision to be invalid or unenforceable. To the contrary, the District Court specifically affirmed that "there was a valid agreement to arbitrate." JA7.

Furthermore, MicroBilt's proposal to sever only of *parts* of the arbitration provision is contrary to the text of the Agreement, REDACTED

REDACTED

REDACTED

REDACTED JA148. As the Third Circuit has found, the presence of a contract provision regarding severance is highly relevant to determine whether severance is appropriate. *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 288 (3d Cir. 2004). Here, the Agreement states with specificity the parties' intended result if severance is warranted: excision of the entire arbitration provision, and return of the claims to federal court where they were originally filed.

MicroBilt points instead to the "miscellaneous" provision of the Terms & Conditions in support of *replacement* of the arbitration provision rather that

severance.  Br. of Appellant at p. 45 (citing JA149, not arbitration provision on JA148).  But this general provision cannot overrule the specific language of the arbitration provision which contemplates that it rises or falls as a whole, and that a return to federal or state court is appropriate if it falls.  JA148; *Isko v. Engelhard Corp.*, 367 F. Supp. 2d 702, 710 (D.N.J. 2005) ("An axiom of language construction is that specific provisions control general terms or clauses.") (citing New Jersey law); *Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Tp.*, 31 F. Supp. 2d 389, 399 (D.N.J. 1998) ("In New Jersey, it is a well-settled principle of contract interpretation that, in construing the contract as a whole, specific terms or clauses control general terms or clauses"); *accord In re G-I Holdings, Inc.*, 755 F.3d 195, 205 (3d Cir. 2014) (construing Delaware law and holding that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").  Furthermore, it suffers from the same difficulty as the arbitration-specific severance provision: to be replaced, the part of the agreement must "must be held invalid or unenforceable" which as discussed has never occurred.  JA149.

MicroBilt's citation to *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273 (3d Cir. 2014) is unavailing, because the contract at issue contained only the "replacement" language, and not the more specific terms describing the remedy if the exact provision at issue (in *VICI* an ambiguous term) is found unenforceable,

unlike the Agreement here. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 328 (D. Del. 2013) (three-line provision ambiguous). Because the arbitration provision here specifically contemplates severance as a whole, it controls over the general "miscellaneous" provision.

Just as courts interpret other contracts against the drafter, and decline to rewrite their terms when a party does not like the result, the District Court properly declined to the alter the terms of the Agreement. *See, e.g.*, *Pennbar Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d. Cir. 1992) (describing principles of contract interpretation, including that courts may not remake or rewrite contracts "the parties themselves saw fit to enter into."). Indeed, the District Court has fully upheld the Agreement, finding a valid agreement to arbitrate, and enforcing that Agreement according to its terms, which provide for AAA administration and compliance with AAA rules.

MicroBilt drafted the Agreement to incorporate AAA rules, and to provide that the case should return to court if the arbitration provision is unenforceable. It has steadfastly refused to depart from the text of the Agreement up until now. MicroBilt must live with the result commanded by the Agreement it drafted and the rules it selected, and face Hernandez's claim in court.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should uphold in its entirety the District

Court's order denying the motion to compel arbitration.

Respectfully Submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.**

*/s/ Lauren KW Brennan*
James A. Francis
John Soumilas
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600

Dated: March 22, 2023

## CERTIFICATIONS OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

_s/ James A. Francis_
JAMES A. FRANCIS
Attorney for Appellant

Dated: March 22, 2023

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

_s/ John Soumilas_
JOHN SOUMILAS
Attorney for Appellant

Dated: March 22, 2023

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

_s/ Lauren KW Brennan_
LAUREN KW BRENNAN
Attorney for Appellant

Dated: March 22, 2023

## CERTIFICATE OF WORD COUNT

1.    This brief complies with the type-volume limitations of Fed. R. App. 32(a)(7)(B) because this brief contains 8,736 words, excluding those parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14.

*s/ Lauren KW Brennan*
LAUREN KW BRENNAN

Attorney for Appellants

Dated:  March 22, 2023

## CERTIFICATE OF BRIEF TEXT

I hereby certify that the text of the E-Brief and Hard Copies of the foregoing BRIEF OF APPELLEE are identical.

*s/ Lauren KW Brennan*
LAUREN KW BRENNAN
Attorney for Appellants

Dated:  March 22, 2023

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF file of the foregoing BRIEF OF APPELLEE prior to electronic filing using AVG Anti-Virus Business Edition.

*s/ Lauren KW Brennan*
LAUREN KW BRENNAN
Attorney for Appellants

Dated:  March 22, 2023

## CERTIFICATE OF SERVICE

I hereby certify that an electronic copy of the foregoing BRIEF OF APPELLEE was  filed and served via ECF, and that service of this document on Appellant has been accomplished by operation of the CM/ECF system.

*s/ Lauren KW Brennan*
LAUREN KW BRENNAN
Attorney for Appellants

Dated:  March 22, 2023